Argued July 2, affirmed October 22, 1958

# MORGAN, PUBLIC UTILITY COMMISSIONER *v.* PORTLAND TRACTION COMPANY

331 P. 2d 344

*Grant T. Anderson* argued the cause for appellant. On the brief were King, Miller, Anderson, Nash & Yerke, Portland.

*Robert R. Hollis,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Irving C. Allen, Assistant Attorney General, Salem.

Before PERRY, Chief Justice, and ROSSMAN, LUSK, WARNER, SLOAN and O'CONNELL, Justices.

LUSK, J.

On January 28, 1958, the circuit court for Multnomah County entered an order directing the issuance of a peremptory writ of mandamus which commanded the Portland Traction Company (hereinafter called the Company) to comply with various orders of the

plaintiff, the Public Utility Commissioner of Oregon (hereinafter called the Commissioner) requiring the Company to render service as a common carrier of passengers. This is an appeal by the Company from the circuit court's order.

The order was issued ex parte; hence, the only record consists of the petition for the writ, the order directing its issuance, and the writ, together with attached exhibits. From these the following facts appear: The Company, an Oregon corporation, is a common carrier by railroad engaged in the transportation of passengers and property between Oregon City in Clackamas County and Portland in Multnomah County, and between Bellrose, a station in Multnomah County, and Portland, all in the state of Oregon. As a carrier of passengers it is an interurban electric railroad. It is subject to the jurisdiction of the Commissioner.

In 1952 and again in 1954 the Company applied to the Commissioner for authority to abandon its passenger operations. These applications were denied. On February 17, 1956, the Commissioner issued order no. 34218 prescribing minimum passenger service to be provided by the Company.

On March 18, 1957, the Commissioner issued order no. 35219, which related to a particular controversy, the history of which is briefly as follows: The Company's railroad is for the most part on the East side of the Willamette River. Its original Northern terminus was in downtown Portland, on the West side of the river, where it maintained a station. Its tracks crossed the river from Portland's East side on the Hawthorne Bridge. In September, 1956, Multnomah County closed the bridge to rail traffic. For a time, the Company furnished connecting bus service from

its terminus on the East side of the river to the West side. Eventually, the Company discontinued this service. It claimed that no other bridge across the river was available for rail traffic, and that it could not be lawfully compelled to provide transportation for passengers beyond its terminus on the East side. By order no. 35219, the Commissioner directed the Company to provide such service in full compliance with order no. 34218. The Company commenced a proceeding in the circuit court of Multnomah County to have this order declared invalid. After a hearing, the court on September 7, 1957, entered a decree adjudging the order "valid and reasonable in all respects." Thereafter, the Commissioner filed suit in the circuit court for Multnomah County to enjoin the Company from disobeying order no. 35219 "by eliminating its service between Portland, on the one hand, and East Portland, Sellwood Gardens, Oaks Park, and The Moorage, on the other hand, except on a proper order of plaintiff or by an order of a court of competent jurisdiction." On November 14, 1957, the court entered a decree granting the relief prayed for. Our records disclose that appeals from each of these decrees are pending in this court.

On November 25, 1957, the Company notified the Commissioner in writing that it intended to abandon its passenger service at the close of business on December 15, 1957. After a public hearing upon the matter, the Commissioner, on January 25, 1958, issued order no. 35782 directing the Company to continue its service in accordance with the requirements of previous orders, except for certain modifications in schedules specifically set forth. Notwithstanding this order, the Company on January 25, 1958, totally abandoned its passenger service.

The Commissioner's petition for a peremptory writ of mandamus to secure the enforcement of his orders was filed on January 28, 1958, and the writ issued on the same day. No service was made on the Company, its officers or agents. There has been brought to this court a transcript of the proceedings in court at the time that application for issuance of the writ was made by counsel for the Commissioner, from which it is disclosed that Mr. Grant T. Anderson, attorney for the Company, was present and made a statement to the court. He expressly declined to enter a formal appearance, but voiced objection to the issuance of a peremptory writ without giving his client an opportunity to be heard.

The Company in its brief relies for reversal upon the following propositions:

"1. The manner of the issuance of the writ was a denial of procedural due process of law.

"2. The command of the writ, if enforced, will deprive PTCO of its property without due process of law.

"3. The command of the writ, if enforced, will impose an unreasonable and unconstitutional burden upon interstate commerce.

"4. PUC Order No. 35782 upon which the mandamus rests is void for failure on the part of PUC to make findings of fact upon material issues which were essential to the validity of such order.

"5. Subsequent to the issuance of the writ the court in another proceeding between the same parties adjudicated adversely to PUC every matter upon which the validity of the writ depends, and PUC is estopped to claim further thereunder."

The Company expressly concedes in its brief that

it has no other defenses to the enforcement of the order.

The controlling question in the case is whether, in view of the statutes which prescribe the procedure for judicial review of the Commissioner's orders, the Company may in this proceeding contest the validity of the order to enforce which the writ was issued. We proceed to an examination of these statutes. ORS 760.530 provides in part: "(1) Every order of the commissioner shall be forthwith served upon the statutory agent of the carrier in the State of Oregon or in such other manner as may be provided by law; * * * (3) Every common carrier, its agent and employes, shall observe and comply with such orders so long as they remain in effect; * * *." ORS 760.575 provides: "All rates, fares, charges, classifications, joint rates, regulations, practices and *service* fixed or prescribed by the commissioner shall be in force and shall be prima facie reasonable, until found otherwise in an action brought for that purpose under ORS 760.580 to 760.595." (Italics added.) ORS 760.580 provides that any railroad affected by any order of the Commissioner fixing any service, being dissatisfied therewith, "may commence a suit in the circuit court of Marion County against the commissioner as defendant to set aside any such order on the ground that the * * * service prescribed or fixed in such order is unreasonable." By subdivision three of this section all suits brought thereunder are given precedence over any civil suit of a different nature pending in the court, and it is provided that the suit shall be heard and determined as a suit in equity. Under subdivision four of this section, in all such trials "the burden is upon the plaintiff to show by clear and satisfactory evidence that the order of the commissioner complained

of is unlawful or unreasonable." ORS 760.585 makes applicable to such a suit the provisions of ORS 757.570, which in substance authorize the court for cause shown to suspend or stay the operation of the order of the Commissioner complained of until the final disposition of the suit, upon the giving of such bond or other security and upon such conditions as the court may require. An appeal may be taken to the Supreme Court by either party. No such appeal shall stay the operation of the order unless the circuit court or Supreme Court so directs. ORS 760.595 and 757.580.

In 1957 the Legislature passed an act relating to the regulation of railroads (Oregon Laws 1957, Chapter 415). Section 11 of this act, now ORS 760.027, reads:

"(1) Whenever it appears to the commissioner that any railroad is engaged or about to engage in any acts or practices which constitute a violation of any provisions of the statutes listed in ORS 760.005, or any rule, regulation, requirement, order, term or condition issued thereunder, he may apply to any circuit court of the state in which district the railroad operates for the enforcement of such statute, rule, regulation, requirement, order, term or condition.

"(2) Such court, without bond, has jurisdiction to enforce obedience thereto by injunction, or by other processes, mandatory or otherwise, restraining such railroad or its officers, agents, employes and representatives from further violation of such statute, rule, regulation, requirement, order, term or condition, and enjoining upon them obedience thereto.

"(3) The provisions of this section are in addition to and not in substitution for any other enforcement provisions contained in any statute administered by the commissioner."

The parties disagree as to whether the order here appealed from was sought and the court purported to make it pursuant to the foregoing section or to ORS 34.160, which provides: "When the right to require the performance of the act is clear, and it is apparent that no valid excuse can be given for not performing it, a peremptory mandamus shall be allowed in the first instance; in all other cases, the alternative writ shall be first issued." We think that it is unimportant to resolve that dispute. Notwithstanding the name given to the order or the form in which it is cast, it is unquestionably an order which the court was authorized to make by the terms of ORS 760.027.

■ In our opinion, the statutory procedure outlined above is intended to be the exclusive method of testing the validity of the Commissioner's order. It was so held in *State v. Corvallis & Eastern Railroad Company,* 59 Or 450, 117 P 980. The case arose under the predecessor of the present legislation, Oregon Laws 1907, ch 53, LOL § 6875, et seq. The act provided for the creation of a railroad commission composed of three commissioners, with powers and duties similar to those exercised by the present Public Utility Commissioner. Like the present statute, the former statute made the orders of the railroad commission prima facie reasonable until found otherwise in an action brought for that purpose against the commission in Marion County, LOL § 6909, 6910. In the *Corvallis & Eastern Railroad Company* case, the commission brought action to recover a statutory penalty for failure of the railroad company to comply with an order of the commission requiring it to build and maintain at a station on its road a depot of a prescribed size, capacity, and facilities, and to keep an agent employed there. A demurrer to the complaint on the

ground that it failed to allege the volume of business transacted by the defendant at the station and that a depot at the station was necessary was held to have been properly over-ruled by the trial judge. As the records of this court show, the only question submitted to the jury was whether the defendant had complied with the order. A judgment for the plaintiff was affirmed. After referring to the provisions of the statute which we have mentioned, the court said, 59 Or at 454:

> "It will be noted that the reasonableness of an order of the commissioners, prescribing any service, can only be challenged by a railroad company, in a suit instituted for that purpose by it as plaintiff against the commissioners as defendants. As the order fixing the service to be performed is prima facie reasonable, it was unnecessary to allege that fact in the complaint, or to aver that the erection and maintenance of a depot at Lyons was essential, or to state the volume of railroad business transacted at that place."

See, also, *Gates v. Public Service Commission,* 86 Or 442, 459, 167 P 791, 168 P 939.

*Southern Pacific Company v. Heltzel,* 201 Or 1, 268 P2d 605, is not in conflict with this conclusion. The question in that case was whether the Public Utility Commissioner has authority under the statute to prescribe minimum rates for the transportation of freight by railroad. We held that he has not, and that a writ of prohibition should issue prohibiting the Commissioner from conducting a hearing into the reasonableness of tariffs filed by two railroads lowering the rates for the transportation of petroleum products by rail. The basis of the decision is that the Commissioner was proposing to act beyond his jurisdiction. There is no such question here. Beyond that,

since the Southern Pacific Company sought relief prior to a hearing and for the purpose of preventing one from being held, the decision is not authority for the proposition that if there had been a hearing and the Commissioner had made findings and an order these could have been challenged in any other way than that provided by the statute. In short, the court was not concerned in that case with the question of the procedure for reviewing an order of the Commissioner, but with the question whether the Commissioner could be enjoined from holding a hearing and entering an order in excess of his statutory authority.

■ Under the statutory procedure, the burden is upon the railroad to show by clear and satisfactory evidence that the order is unreasonable or unlawful. The statute contemplates that the cause shall be tried upon the record made before the Commissioner, but that if new or additional evidence is offered, a copy of it shall be transmitted to the Commissioner, who, after considering it, may alter, modify, amend, or rescind his order or the findings of fact and conclusions of law with reference thereto. In the event that the Commissioner rescinds his order, the suit shall be dismissed; if he modifies it, its validity must be determined as modified.[1]

If the Company should be permitted to by-pass this procedure and defend against an enforcement proceeding by attacking the administrative order collaterally on the merits, there would then be a complete trial de novo, and the burden of establishing the rea-

---

[1] "* * * If he alters, modifies or amends his order, findings of fact or conclusions of law, such altered, modified or amended order, findings of fact or conclusions of law shall take the place of the original, and the judgment or decree shall be rendered in the suit as though the order, findings of fact or conclusions of law as so changed had been made in the first instance. If the original order, findings of fact or conclusions of law are not rescinded or changed by the commissioner, judgment or decree shall be rendered upon the original order, findings of fact or conclusions of law." ORS 756.600 and 760.590.

sonableness of the order would be shifted to the Commissioner. If that may be done in this case, we see no reason why it may not be done with respect to any order of the Commissioner regulating the practices of a utility or a railroad, and made in the exercise of authority conferred upon him by statute, whenever the utility or railroad asserts that to enforce the order would violate its constitutional rights.[2] The result could be disruption of the legislative scheme, which has been observed without protest for many years and has been held to be constitutional by the Supreme Court of the United States. *Southern Pacific Company v. Campbell,* 230 US 537, 552-553, 33 S Ct 1027, 57 L ed 1610.

It is true that the legislature has not said in so many words that the validity of the order may not be challenged in a proceeding brought to enforce it. "But meaning, though not explicitly stated in words, may be imbedded in a coherent scheme." *United States v. Ruzicka,* 329 US 287, 292, 67 S Ct 207, 91 L ed 290. In that case it was held that a handler of milk, subject to the provisions of the Marketing Agreement Act of June 3, 1937, 7 USCA § 601, et seq., could not resist a claim against him by the Secretary of Agriculture without previously having sought to challenge the claim in a proceeding defined in the Act before the Secretary of Agriculture, and, if dissatisfied with the Secretary's ruling, by a suit in equity in a district court of the United States to review such ruling.

In at least two other states, the courts have con-

---

[2] ORS 756.505-756.610 prescribe the procedure for hearings before the Commissioner and for judicial review "under any statute administered by him." These sections are known as the "Uniform Practice Act of the Public Utilities Commissioner." See Butcher v. Flagg, 185 Or 471, 203 P2d 651. The provisions for judicial review. ORS 756.580-756.610, are substantially the same as those which relate to railroads only, and the intent to make this procedure the exclusive method of testing the validity of the Commissioner's orders is equally clear.

strued statutes similar to ours as providing an exclusive remedy. In *Towers v. Kensington Railway Co.,* 131 Md 649, 102 A 1011, the Maryland Public Service Commission issued an order fixing the rates of the defendant railroad. The railroad company brought a statutory review proceeding to set aside the order, claiming that it established confiscatory rates. While this suit was pending, the railroad company collected higher fares in violation of the Commission's order. The Commission thereupon sued to compel compliance with its order pending review in the first proceeding. The court held that the injunction should issue, saying:

"It was the intention of the Legislature than an order of the Commission should be respected and obeyed by the party against whom it was passed, and that it should remain in full force and vigor until it should be revoked or restrained in the mode and manner provided by sections 43, 44 and 45 of the act [statutory petition to review the order]. The duty of obedience is imposed by the imperative and mandatory provisions of the act, which it is the duty of the court to enforce. Any other construction would weaken the powers and efficient control which it was the design of the act to confer on the Commission, and would introduce great disorder and confusion into the administration of the law." (102A at p 1013).

The court did not review the validity of the administrative order, but enforced it pending determination of its validity in the review proceeding.

In *Michigan Railroad Commission v. Detroit & M. Ry. Co.,* 178 Mich 230, 144 NW 696, affirmed 240 US 564, 36 S Ct 424, 60 L ed 802, the railroad company had discontinued service on a certain route and taken up the tracks. The commission, on the petition of a shipper, ordered replacement and continuance of

service, whereupon the railroad company filed a statutory proceeding to review the order, claiming that it was confiscatory. While this suit was pending, the commission applied to the Supreme Court of Michigan for an original writ of mandamus to remain in force until the hearing and final determination of the review proceeding, and the court ordered the writ issued upon the furnishing of a bond by the petitioner who had initiated the proceeding before the railroad commission to indemnify the railroad company for costs and expenses incurred by it in complying with the order. The court declined to consider the merits of the controversy. The court said:

> "This order is *prima facie* not unreasonable. There is no question but that the legislative intent clearly expressed in this statute was that the orders of the commission should be and continue in force during all subsequent proceedings until modified or set aside by the commission or by the courts." 178 Mich at p 245.

■ We are brought thus to the constitutional questions raised in the company's brief. The Company claims first that to enforce the Commissioner's order in this proceeding without allowing it to litigate the validity of the order is to deny procedural due process as guaranteed by the Fourteenth Amendment. The force of this contention is the same whether or not such an order is preceded by an alternative writ of mandamus or other preliminary order to show cause, and regardless of the grounds, constitutional or otherwise, upon which the order is claimed to be invalid. We think that the contention can not be sustained. In our view, procedural due process is not infringed when the legislature requires a railroad to challenge the Commissioner's order through an exclusive and adequate

review procedure and authorizes the courts to compel compliance with the order, even if invalid, until its validity is thus challenged.

This conclusion is compelled by the holding of the Supreme Court of the United States in *Yakus v. United States,* 321 US 414, 64 S Ct 660, 88 L ed 834, where far more serious questions of procedural fairness were raised than are involved here. The *Yakus* case involved the constitutionality of the Emergency Price Control Act. The Act, as construed by the court, precluded attack on the validity of regulations made under it in criminal prosecutions for their violation, before their validity had been adjudicated by recourse to the protest procedure before the Administrator prescribed by statute. Protest was required to be made within 60 days after issuance of the regulation. Adverse administrative rulings could be reviewed exclusively by a specially created Emergency Court of Appeals and finally by the Supreme Court. Yakus and others were indicted for violation of the Act. By way of defense they sought to challenge the constitutionality of the administrative regulation which they were accused of violating, but which they had not challenged administratively. The Supreme Court, in an opinion by Mr. Chief Justice Stone, held that Congress could constitutionally preclude an attack on the regulation when a separate exclusive procedure for reviewing regulations and orders, which met due process requirements itself, was provided by the Act. The Court said:

> "And we are pointed to no principle of law or provision of the Constitution which precludes Congress from making criminal the violation of an administrative regulation, by one who has failed to avail himself of an adequate separate procedure for the adjudication of its validity * * *." 321 US at p 444.

See, also, *Bowles v. Willingham,* 321 US 503, 64 S Ct 641, 88 L ed 892.

In *United States v. Ruzicka,* supra, the Supreme Court did not find it necessary to discuss any question of procedural due process in holding that a milk handler could not challenge, in an enforcement action, the validity of an order against him by the Secretary of Agriculture after he had failed to bring an exclusive statutory proceeding to review the order.

The Company's second constitutional objection invokes substantive due process. It asserts that, due to diminished patronage, it cannot provide passenger service without suffering out of pocket losses of $190,000 a year, and that, therefore, the Commissioner's order is confiscatory and a taking of property without due process of law in violation of the Fourteenth Amendment. We have already held that this question can be raised only in a statutory suit to review the Commissioner's order. The validity of this contention is, therefore, not before us; nor are we concerned now with the argument in the Company's brief in support of its assertion that the order would impose an unconstitutional burden on interstate commerce. The Company, however, argues that if the Commissioner's order is invalid and confiscatory, as it claims, the enforcement of the order, even pending determination of its validity in a statutory review proceeding, would cause "daily confiscation" of its property without due process of law. The Company cites in support of this contention several decisions of the United States Supreme Court concerning the exercise of federal court jurisdiction to enjoin enforcement of state administrative orders. A doctrine had developed from a line of cases, beginning with *Prentis v. Atlantic Coast Line*

*Co.*, 211 US 210, 29 S Ct 67, 53 L ed 150, that the federal courts should decline jurisdiction to enjoin state administrative orders, alleged to be confiscatory, when the defendant in the state proceedings had not exhausted a "legislative review" procedure available in state courts for the re-examination of the administrative order. Several cases held the *Prentis* doctrine inapplicable when a stay pending state court review of the rate or other order was either denied or unavailable in the state courts. The rule of these cases was stated by Mr. Justice Roberts, speaking for the court in *Porter v. Investors' Syndicate,* 286 US 461, 52 S Ct 617, 76 L ed 1226 (1932):

> "Where, as ancillary to the review and correction of administrative action, the state statute provides that the complaining party may have a stay until final decision, there is no deprivation of due process, although the statute in words attributes final and binding character to the initial decision of a board or commissioner. Pacific Live Stock Co. v. Lewis, 241 US 440, 454, 60 L ed 1084, 1098, 36 S Ct 637. But where either the plain provisions of the statute (Pacific Telephone & Telegraph Co. v. Kuykendall, 265 US 196, 203, 204, 68 L ed 975, 980, 981, 44 S Ct 553) or the decisions of the state court interpreting the act (Oklahoma Natural Gas Co. v. Russell, 261 US 290, 67 L ed 659, 43 S Ct 353) precludes a supersedeas or stay until the legislative process is completed by the final action of the reviewing court, due process is not afforded, and in cases where the other requisites of federal jurisdiction exist recourse to a federal court of equity is justified." 286 US at p 470.

Thus, in the course of defining the standards for the exercise of federal jurisdiction, these cases say that due process may require the grant of a stay of an administrative order pending review of its validity

in the state courts, in order to prevent "daily confiscation" during that period.

These decisions, involving, as they do, questions relating to the jurisdiction of the federal courts to enjoin the enforcement of state administrative orders, are not, of course, in all respects germane. Furthermore, they have been severely limited on their jurisdictional holdings by the Johnson Act of 1934, 28 USCA § 1342. See Hart and Wechsler, *The Federal Courts and the Federal System,* 855.

Other decisions of the United States Supreme Court come nearer the mark. In *Yakus v. United States,* supra, the defendants, who were wholesalers of beef, offered to prove that the regulation upon which the prosecution was based would compel them to sell beef at such a price that it would be impossible for them to conduct their business other than at a loss, and they argued that "to impose upon them the choice either of refraining from sales of beef at wholesale or of running the risk of numerous criminal prosecutions and suits for treble damages authorized by § 205 (e), without the benefit of any temporary injunction or stay pending determination by the prescribed statutory procedure of the Regulation's validity, is so harsh in its application to them as to deny them due process of law." 321 US at p 431. In answering this contention Mr. Chief Justice Stone, speaking for the court, said:

> "In the absence of any proceeding before the Administrator we cannot assume that he would fail in the performance of any duty imposed on him by the Constitution and laws of the United States, or that he would deny due process to petitioners by 'loading the record against them' or denying such hearing as the Constitution prescribes. [Citing cases.] Only if we could say in advance of resort to the statutory procedure that it is incapable of

affording due process to petitioners could we conclude that they have shown any legal excuse for their failure to resort to it or that their constitutional rights have been or will be infringed." 321 US at 434-435.

Again, after referring to provisions of the Act relating to the powers of the Administrator, the court said:

"Under these sections the Administrator may not only alter or set aside the regulation, but he has wide scope for the exercise of his discretionary power to modify or suspend a regulation pending its administrative and judicial review. Hence we cannot assume that petitioners, had they applied to the Administrator, would not have secured all the relief to which they were entitled. *The denial of a right to a restraining order or interlocutory injunction to one who has failed to apply for available administrative relief, not shown to be inadequate, is not a denial of due process.* Natural Gas Pipeline Co. v. Slattery, supra (302 US 310, 82 L ed 281, 58 S Ct 199)." 321 US at p 439. (Italics added.)

■ Furthermore, *Porter v. Investors' Syndicate,* supra, itself indicates that there is no deprivation of due process when a stay of the administrative order pending review is available. 266 US at p 470, quoted supra. See, also, *Pacific Live Stock Co. v. Lewis,* 241 US 440, 454, 36 S Ct 637, 60 L ed 1084.

For present purposes, we may assume that the Commissioner's order is confiscatory, and that a danger of daily confiscation exists while review of the order is pending. Still the Company is in no position to resist the enforcement of the order pending review in the statutory proceeding. A stay pending review of the order is available under ORS 760.585. We were told on the argument by counsel for the Company that he had filed a suit in Marion County to test the validity

of the order, but that no application for a stay was made. Neither has there been any such application in the case pending in this court which involves particularly the Company's operation within the city of Portland. No explanation of the Company's failure to avail itself of the statutory stay has been vouchsafed us.

■ If we are to assume for the purposes of this case that the Company's constitutional rights are in jeopardy, we must also assume that an adequate showing to that effect can be made in the circuit court for Marion County and that if this were done, that court would grant appropriate relief pending the ultimate decision of the case. It is true that such an application would be addressed to the discretion of that court *(State ex rel v. Duncan,* 191 Or 475, 230 P2d 773), but we will not assume that its discretion would be abused.

■ There is no limitation of time in which to apply for a stay pending a review proceeding under ORS 760.580. It may be sought now if such a suit has been filed, as counsel for the Company assures us is the case. Although a court order under ORS 34.110 et seq., or ORS 760.027, enforcing an order of the Commissioner pending review, might conflict with a stay of the Commissioner's order granted pursuant to ORS 760.585, we construe the statutory scheme to mean that a stay, if granted, would take precedence over the enforcement order. Thus, a writ of mandamus or an enforcement order made pursuant to ORS 760.027 will be effective until the validity of the Commissioner's order is determined in a review proceeding under ORS 760.580, or until a stay is granted by the reviewing court pursuant to ORS 760.585.

We are of the opinion, therefore, that the order

should stand. Ex parte orders which affect property rights are not favorites of the law. The right to notice and a hearing is ingrained in our system of jurisprudence. But in this case notice and a hearing could have availed the Company nothing. There was no defense which it could have legally urged. The statute imposed upon the Company the duty of compliance with the order, and this it knew. A way of avoiding compliance, if its claim of deprivation of constitutional rights is well founded or if the order is otherwise unreasonable or unlawful, was pointed out to it by the statute, but this way it chose to ignore. It took and clings to a position which, if sustained by the courts, would deprive the statute of most of its efficacy. We think that this position can not be sustained.

Brief mention only need be made of the two other defenses claimed by the Company to have been available to it.

■ One is that the Commissioner's order is void for failure to make findings of fact upon material issues. This, like the defenses previously discussed, is a contention which may be urged only in a suit brought under the statute to review the Commissioner's order.

■ The other is that a subsequent adjudication in another proceeding between the same parties determined adversely to the Commissioner every matter upon which the validity of the writ depends. The adjudication referred to is said to have been a judgment entered April 8, 1958, by the Multnomah County circuit court, dismissing a contempt proceeding against the Company and its officers for violation of the decree of that court of November 15, 1957, previously referred to, which enjoined the Company from disobeying order no. 35219. It is enough to say that this judgment, whatever effect it may otherwise have,

was not in existence and, therefore, was not available to the defendant as a defense on January 28, 1958, the date of the order from which this appeal was taken.

In conclusion, it is, perhaps, well to add that there is no contention on the part of the Company that it has the right to abandon its passenger operations at will. It apparently concedes the well-recognized rule that it is charged with the duty to continue to operate unless it can do so only at a loss. *Southern Pacific Company v. Railroad Commission,* 60 Or 400, 119 P 727; 74 CJS 939-944, Railroads § 390-392. It does not question the jurisdiction of the Commissioner to order continuance of the service in a proper case. *Southern Pacific Company v. Railroad Commission,* supra. As to whether this is a proper case we neither express nor intimate an opinion. If it is not, the courts are open to the Company to establish its contention in a fair and expeditious procedure provided by the legislature for that purpose. And the courts will be just as vigilant to protect the Company in its property and constitutional rights whenever such a procedure is invoked as they are to guard the procedure against erosive action "whether attempted 'ingeniously or ingenuously'." *Cooper v. Aaron,* 358 US 1, 78 S Ct 1189, 3 L ed 2d 5, decided September 29, 1958.

Being of the opinion that in the particular circumstances of this case the court was warranted in making ex parte an order which would enable the Commissioner to enforce his order in the exercise of the duty imposed upon him by statute, and that no constitutional right of the Company has been impaired, the judgment of the circuit court is affirmed.