Argued June 3, affirmed October 23, petition for rehearing
denied November 19, 1963

# STATE OF OREGON *v.* PORTLAND TRACTION COMPANY

386 P. 2d 435

*John F. Weisser,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General, and Lloyd G. Hammel, Assistant Attorney General, Salem.

*Grant T. Anderson,* Portland, argued the cause for respondent. On the brief were King, Miller, Anderson, Nash & Yerke, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, State of Oregon, from a judgment of the circuit court which granted the defendant's motion for judgment on the pleadings and denied a similar motion made by the state. The action which terminated in that manner was instituted by the state under ORS 760.025 (3) and 760.035 to recover statutory penalties. ORS 760.035 provides:

> "(1) Any railroad which violates any provision of the statutes listed in ORS 760.005, or fails or refuses to perform any duty enjoined upon it, for which a penalty has not been provided, or fails, neglects or refuses to obey any lawful requirement, order made by the commissioner * * * shall forfeit and pay into the State Treasury a sum of not less than $100, nor more than $10,000 for each offense."

ORS 760.025 (3) requires that actions for penalties must be brought in the name of the state.

The defendant had declined to comply with an order promulgated by the Oregon Public Utility Commissioner on January 25, 1958, and identified as Order No. 35782. This court subsequently held the order and two auxiliary orders, Nos. 34218 and 35219, unconstitutional. The state nevertheless contends that the defendant should be penalized for its disregard of the orders from January 25, 1958, to November 10, 1958,

when the circuit court suspended the enforcement of Order 35782. This action to recover the penalties prescribed by ORS 760.035 is based upon the three orders.

The state's sole assignment of error submits:

"The lower court erred in granting defendant's motion for judgment on the pleadings and denying plaintiff's motion for judgment on the pleadings."

The action out of which this appeal arose is a sequel to three previous cases which had their origin in the same controversy that gave rise to this one. The three are *Portland Traction Company v. Hill*, 231 Or 354, 372 P2d 501; *Portland Traction Company v. Hill*, 222 Or 636, 352 P2d 552, 353 P2d 838; and *Morgan v. Portland Traction Company*, 222 Or 614, 331 P2d 344. Facts that are relevant to the issues now before us are stated in those decisions. The pleadings are extensive, but we do not deem it essential to set forth all of their averments; the following will suffice.

Until January 25, 1958, the defendant rendered passenger service upon two short lines of railroad, both of which, at their Portland extremity, terminated in a small station in the west side central business section of that city. One of the two lines ran south from the station for about fourteen miles to a point one mile south of Oregon City. The other line, after using about three miles of the same tracks out of Portland that served the Oregon City line, took a course easterly to a community 24 miles from Portland. That line rendered passenger service for only the first ten miles to a place known as Bellrose. January 25, 1958, the defendant discontinued all of its passenger operations. However, it did not abandon its freight service. Those trains still operate.

November 25, 1957, the defendant gave notice to the Public Utility Commissioner (then the Honorable Howard Morgan) that on December 15, 1957, it would discontinue all passenger service upon its lines. It assigned as the reason for its intended action insufficient patronage and heavy financial losses. December 3, 1957, the commissioner ordered the defendant to continue its passenger services and at the same time began a public hearing into the need for the defendant's services. The defendant, for the time, maintained its passenger service.

January 25, 1958, the commissioner promulgated Order No. 35782 aforementioned; it reads:

> "Ordered that Portland Traction Company shall continue to furnish service as a common carrier of passengers and freight by transporting at its presently published rates, passengers between Bellrose and Portland, including all intermediate points, and between Oregon City and Portland, including all intermediate points, in full compliance with Order No. 34218, issued February 17, 1956, and Order No. 34219 issued March 18, 1957, except insofar as said order is modified by Table B attached hereto."

On the same day that Order 35782 was entered the defendant discontinued its passenger service. When it did so, Order 35782 had not been vacated or stayed by any court order. Nor had any suit been filed to test its validity. April 25, 1958, which was three months after the entry of Order 35782 and likewise three months after the defendant had discontinued its passenger service, it filed a complaint in the Circuit Court for Marion County under ORS 760.580 to 760.595 which sought a decree holding Order 35782 invalid. November 10, 1958, approximately eight months after the entry of Order 35782 and the discontinuance of

passenger service, the defendant obtained an order from the Circuit Court for Marion County under ORS 756.590 staying and suspending the operation of Order 35782.

December 26, 1958, the commissioner entered Order No. 36459 which "rescinded effective this date" Orders 34218, 35219, and 35782. Although Orders 34218 and 35219 are not of major importance, we will give a brief description of them. In 1952 and again in 1954 the defendant had applied to the commissioner for authority to discontinue its passenger operations. The authority was refused. Incidental to the denial, Orders 34218 and 35219 were issued—the former on February 17, 1956, and the latter on March 18, 1957. Both orders directed the defendant to maintain its passenger service; 34218 required the defendant to supplement its existing service with additional schedules, and 35219 required the defendant to inaugurate some bus service. The commissioner, in requiring the augmented service was hopeful that additional facilities would win for the defendant greater patronage. The defendant complied with both orders until January 25, 1958.

Of the several orders which the commissioner entered pertaining to the passenger service, Order No. 35782 is the crucial one. It was entered January 25, 1958, the day on which the defendant ended its passenger service. When we hereafter refer to that order, we will imply reference to Nos. 34218 and 35219. Order 35782 expressly refers to 34218 and 35219 and makes them auxiliary to it.

The state's (appellant's) brief declares:

"Order No. 35782 was subsequently declared to be unconstitutional and void, as confiscating Defendant's property."

The same brief continues:

"After remand the Marion County Circuit Court found that Order No. 35782 was unconstitutional and void and enjoined bringing of any penalty proceedings for failure to obey order No. 35782. (Abs 10) On appeal (Portland Traction Co. v. Hill, PUC, (June 13, 1962) 74 Adv Sh 817), this Court sustained the portion of the Marion County order declaring PUC Order No. 35782 unconstitutional and reversed that portion which enjoined the bringing of a penalty action. (Abs 11) This court 'express(ed) no opinion as to whether or not any action of that kind may be maintained against that company.' (Abs 11)"

The decree of the Circuit Court for Marion County which held Order 35782 invalid was entered December 20, 1960. The decision entitled *Portland Traction Co. v. Hill*, 231 Or 354, 372 P2d 501, was announced on June 13, 1962; it affirmed the holding of the circuit court that Order 35782 was invalid. The complaint that instituted that suit was filed, as we have said, April 25, 1958, three months after the promulgation of Order 35782.

Before the defendant challenged the validity of Order 35782 by the institution of the suit just mentioned, it had attempted to do so in another manner. January 28, 1958, three days after the commissioner had entered Order 35782, he obtained from the Circuit Court for Multnomah County ex parte a peremptory writ of mandamus commanding the defendant to comply with Order 35782. The defendant, upon appearing, challenged the constitutionality of Order 35782. *Morgan v. Portland Traction Company*, 222 Or 614, 331 P2d 344, held that the procedure which is prescribed by ORS 760.580 to 760.595 for contesting the validity of a commissioner's order is the exclusive means for so

doing and that the defendant was not at liberty to attack the order's validity in the mandamus proceeding. Accordingly, the defendant's efforts to obtain a ruling as to the validity of Order 35782 in the mandamus proceeding failed. The writ that was issued in the mandamus action commanded the defendant to comply with Orders 34218, 35219, and 35782. It was issued January 28, 1958. The following day, January 29, 1958, notice of appeal was served and at the same time the defendant filed an undertaking on appeal for the payment of "all damages, costs and disbursements" which thereupon stayed enforcement of the judgment entered in the mandamus action.

We just stated that the defendant (traction company) in appealing from the judgment entered by the circuit court in the mandamus action gave notice of appeal and filed an undertaking on appeal. The undertaking was for the payment of "all damages, costs and disbursements" which might be awarded to the commissioner or the state on appeal. In view of the fact that the state argues that the traction company did not file until November 10, 1958, the stay bond for which ORS 760.580 to 760.595 makes provision, it is pertinent to notice that the defendant within four days of the promulgation of Order 35782 filed the appeal undertaking and thereby stayed the enforcement of 35782 and its two companion orders. Had the defendant also filed the precise stay bond for which ORS 757.570 (see ORS 760.585) makes provision, the bond thus filed apparently would have been a duplicate of the one already filed, that is, the appeal undertaking. The one already filed (the appeal undertaking) had effectively stayed the enforcement of Order 35782 and its two auxiliary orders. The peremptory writ of mandamus which was issued in the mandamus proceeding mandated the de-

fendant (traction company) to comply with Order 35782 and its two auxiliary orders. Hence the stay of the mandamus writ which was effected by the filing of the appeal undertaking had the same effect and subjected the defendant to the same liability as if the defendant had filed the stay undertaking for which ORS 757.570 (see ORS 760.585) makes provision. It will be noticed that (1) Order 35782 was promulgated by the commissioner January 25, 1958, (2) the peremptory writ of mandamus was issued by the circuit court January 28, 1958, and (3) the defendant filed its undertaking on appeal (stay) January 29, 1958. Thus, the defendant acted with promptness. The peremptory writ of mandamus was in effect only one day before it was stayed. Obviously, when it was stayed Order 35782 was also stayed.

November 10, 1958, the defendant filed the precise type of undertaking specified in ORS 757.570 (see ORS 760.585). That stay bond was filed when this court's decision affirming the circuit court's disposition of the mandamus proceeding went into effect. A month and a half later, that is, on December 26, 1958, the commissioner rescinded Order 35782 and its two companions. If we eliminate the (1) day upon which Order 35782 was promulgated, (2) day when the mandamus proceeding was heard by the circuit court and (3) day when the appeal undertaking was filed, there was only one day when Order 35782 was not stayed.

The mandamus decision just mentioned *(Morgan v. Traction Co.)* was announced October 22, 1958. April 25, 1958, six months prior to its announcement, the defendant had instituted *Portland Traction Co. v. Hill,* 231 Or 354, 372 P2d 501. That suit was filed in Marion County under ORS 756.580. (See also ORS

760.580.) It challenged the constitutionality of Order 35782. The procedure which it embraced was that which *Morgan v. Portland Traction Co.* delineated and termed exclusive.

Order 35782 and its enforcement were held invalid in the suit just mentioned—*Portland Traction Co. v. Hill*, 231 Or 354, 372 P2d 501. The decision set forth facts and data showing that the number of passengers carried by the defendant had recently declined drastically and that income from passenger traffic was materially below out-of-pocket expenses. The decision pointed out that the City of Portland had declined to renew the defendant's franchise for the maintenance of tracks in the city's streets and that the County of Multnomah which owns and operates Hawthorne Bridge in Portland had eliminated the defendant's rails from that bridge, thereby rendering it impossible for the defendant's cars to cross the Willamette River in Portland. Thus, the defendant could not carry its passengers to the part of Portland which they wished to reach. Nor could its cars reach the part of Portland where they could pick up passengers for the outgoing trip. Those facts, together with the declining popularity of streetcar transportation, had caused the number of passengers to reach a very low point.

In considering the state's contention that the defendant should be penalized for the attitude which it manifested toward Order 35782 and its companion orders, we must bear in mind that this court held that the defendant was not required to comply with those orders. Before we held the orders invalid the circuit court had deemed them confiscatory. We affirmed its decree and pointed out, as an additional reason, that the evidence clearly showed there was no longer need

for the defendant's passenger service. ORS 760.205 to 760.255, which our decision cited, warrants a discontinuance of a public service when no substantial need for it any longer remains. Our decision reviewed facts which showed that in the last year of the defendant's passenger operation it carried less than one passenger per train mile and that if it were required to continue its passenger service it would be destined to run its cars "virtually empty at an ever increasing annual financial loss."

The state argues that although Order 35782 was declared unconstitutional and void by the circuit court December 20, 1960, in a decision which this court affirmed June 13, 1962, our law deemed the order valid and entitled to the respect of a constitutional order in the period of January 25, 1958, (when the commissioner entered it) to November 10, 1958, (when the circuit court, acting under ORS 756.590, stayed its enforcement). In other words, the state contends that even after the order was declared unconstitutional fines could be imposed upon the defendant for its previous disregard of the order. Stated otherwise, the state submits that the invalidity of an order, subsequently clearly established, does not suffice to save one from penalization for his previous disregard of it. The state believes that no one is at liberty to disobey an order unless he first obtains a stay of it or a judicial decision holding it invalid.

Obviously, orders entered by the commissioner, like statutes enacted by the legislature, are presumed valid. The maintenance of law and order require nothing less. But that does not mean that a decision by a court which holds an order or a statute unconstitutional operates only prospectively from the day of its pro-

nouncement and leaves the past untouched. That is especially true in a case such as this in which the evidence covered the entire period beginning with the promulgation of Order 35782 (January 25, 1958). It was impossible for the order to have operated upon a split-second basis. It was either totally valid or totally invalid. Such necessarily was the basis of the holding in *Portland Traction Co. v. Hill,* 222 Or 636, 352 P2d 552.

We come now specifically to the question as to whether the defendant has subjected itself to a fine under ORS 760.025 (3). It must be remembered that the state predicates its claim for a fine upon defendant's attitude toward Orders 34218, 35219, and 35782.

The state gives much attention to *Atlantic Coast Line Railroad Company v. Florida,* 295 US 301, 55 S Ct 713, 79 L Ed 1451. In that case the Atlantic Coast Line had maintained voluntarily a schedule of charges known as the Cummer Scale for the transportation of logs within Florida. Shortly the Railroad Commission of Florida gave the scale an official status. Thereafter, the Public Service Commission of Georgia filed a complaint with the Interstate Commerce Commission which charged that the Cummer Scale discriminated against interstate commerce. After a hearing the Interstate Commerce Commission sustained the complaint and prescribed a new schedule of rates higher than the Cummer Scale. Then Florida and shippers who favored the Cummer Scale brought a suit in a federal court which attacked the Interstate Commerce Commission's ruling. The court dismissed the suit. But the United States Supreme Court held that since the Interstate Commerce Commission had not accompanied its ruling with findings, its rate schedule was invalid and vacated it. In the two year period that elapsed from the Inter-

state Commerce Commission promulgation of its schedule to the ruling by the United States Supreme Court which vacated the schedule the carrier had collected $293,946.38 in excess of the Cummer Scale. After the reversal by the United States Supreme Court, the Interstate Commerce Commission conducted a new hearing and then entered a schedule of rates, accompanied by findings, exactly in the same terms as its previous schedule. The Florida shippers, through suit in the United States courts and by appeal to the United States Supreme Court, challenged the schedule. The latter was sustained. Then the shippers instituted suit to recover the overcharges which they had paid. It will be observed (1) that the shippers had paid $293,946.38 more under the schedule of rates prescribed by the Interstate Commerce Commission than they would have paid under the Cummer Scale, and (2) that the Interstate Commerce Commission's schedule was held to be invalid because it lacked supporting findings, and (3) later a rate in exactly the same figures as the one that had been held invalid was sustained by the Interstate Commerce Commission and the supporting decision of the United States Supreme Court. The decision in the case under review held that restitution was not required and granted none. The dissenting opinion by Justice Roberts, which received the concurrence of Chief Justice Hughes and Justices Brandies and Stone, declared:

"To hold that the claimants may not have restitution is to say that invalid, void or voidable orders of the Commission have precisely the same force and effect as orders lawfully made, if from extrinsic facts and matters not cognizable by the court the conclusion may be drawn that the Commission might have made a valid order in the circumstances. So to hold is to recognize in a restitution proceed-

ing, a jurisdiction which in no other circumstances and in no other case could a federal court exercise; and to permit that court to ignore and nullify action in a field within the state's sovereign power."

One reason why the majority refused to order restitution was because the Cummer Scale prescribed rates that did not discharge the cost of carriage. They were confiscatory. We quote the following from the opinion (page 312 and 313):

"* * * The two sets of findings tell us, when read together, that restitution is without support in equity and conscience, whatever support may come to it from procedural entanglements.

"The carrier's position takes on an added equity when the fact is borne in mind that the charges of the Cummer Schedule are less than compensatory, and would result in confiscation if enforced by the power of the State after challenge by the carrier in appropriate proceedings. * * *"

Thus, the majority refused to impose upon the carrier, even through restitution, a schedule of rates which were so low that they were confiscatory. We see from that fact and from the minority's words that the decision under review does not warrant a belief that an unconstitutional order can be used as a weapon of offense.

*Yazoo and M. V. R. Co. v. Mississippi Railroad Commission,* 166 Miss 359, 146 So 430, resolved a case which was remarkably similar to the one before us. In that case the Mississippi Railroad Commission had recovered a penalty against the railroad on the ground that the railroad had discontinued its depot at Lawrence, Mississippi, without first having obtained the consent of the commission. A Mississippi statute provided:

"And it shall be unlawful for any railroad to

abolish or disuse any depot when once established, or to fail to keep up the same and to regularly stop the trains thereat, without the consent of the commission."

The statute provided for the imposition of a fine in the event a violation of the statute occurred. The railroad had maintained a depot at Lawrence, but in recent years it operated the depot at a loss. According to the decision, "It was conceded that the railroad company had not asked the consent of the commission, nor had same been obtained by law in any manner." The Mississippi Attorney General, in endeavoring to sustain the fine that had been imposed, argued that since the railroad had not obtained the commission's consent to termination of the depot, the fine was inevitable. The court, in vacating the fine, reasoned:

"It appears to us that it would be manifestly unjust to impose a heavy penalty, and at the same time announce that the Railroad Commission ought to give its consent, thus technically requiring a penalty to be paid when no wrong has been done the people of the state in the particular act upon which the conviction rests."

The court then turned to *Western Union Telegraph Company v. Mississippi Railroad Commission,* 74 Miss 80, 21 So 15, in which a penalty of $500 had been imposed upon the telegraph company for abolishing its office at Fayette, Mississippi. The facts in the telegraph company case show that the receipts of the office were insufficient to meet the expense of maintaining it. The decision in that case set aside the fine notwithstanding the fact that the commission had refused to grant the company permission to close the office. We quote from the court's opinion (in the depot case):

"The controlling case here, however, is Western

Union Telegraph Company v. Mississippi Railroad Commission, 74 Miss 80, 21 So 15, 17, wherein the lower court imposed a penalty of $500 on a telegraph company for abolishing its office at Fayette, Miss., without the consent of the Railroad Commission, under section 4328, Ann. Code of 1892, now section 7057, 1930. There is no essential difference in the language of the two statutes. The only difference in the two cases is that the commission had refused the telegraph company permission to discontinue the Fayette office. The defense there, as here, was that receipts at Fayette were insufficient to pay the expense of keeping the office up, and that it could not be maintained except at a loss. Judge Cooper, as the organ of the court, said that: 'The findings and determination of matters committed to the railroad commission by it are not final and conclusive, and it was never so intended by the statute. It is a mere administrative agency, although in some respects, it exercises quasi judicial power. But at last the reasonableness, and consequently the lawfulness, of its determination is left subject to judicial inquiry and decision. If a common carrier, required by the commission to do an act, is of opinion that the requirement is a violation of its legal rights, it may refuse compliance, and, if upon judicial inquiry, its contention is supported, it is not punishable or liable for a failure to comply. But it takes the risk of coming under all the penalties and liabilities declared by the statute if, upon such inquiry, the courts uphold the action of the commission. * * *'

*     *     *

"To impose the penalty in this case, when we are of the opinion that the Railroad Commission could not, under the law, require the depot at Lawrence, Miss., to be maintained, cannot be justified, and it is immaterial whether the depot is closed with or without the sanction of the Railroad Commission, if the fact existed that the depot was being operated at a loss to the common carrier.

The burden of the penalty may not be imposed with any more assurance, under our Constitutions, than could the maintenance of the depot be required. Each would be equally repugnant to the decisions cited supra."

It may be that an invalid order such as the one in the Atlantic Coast Line case may have defensive value, but an order of that character cannot serve as an offensive weapon. It cannot become the basis of vindicating itself through the imposition of a penalty. In *State v. La Follette,* 100 Or 1, 196 P 412, this court, in speaking of the vindication of the judicial order through the means of contempt proceedings, declared:

"* * * If, however, an order is void because made without jurisdiction, then a party can question the validity of the order and can prevent punishment as for a contempt. An order which is absolutely void is only a seeming order and in truth is no order at all * * *."

We have taken note of the fact that January 29, 1958, one day after the circuit court issued its writ of peremptory mandamus ordering the defendant to comply with Order 35782 and its two auxiliaries, the defendant, upon appealing, filed a stay undertaking. The case in which the stay undertaking was filed was decided by this court October 22, 1958. Twenty days thereafter, that is, November 12, the mandate of this court was destined to issue. November 10, 1958, the circuit court, acting pursuant to ORS 757.570 (see ORS 760.580(1)), stayed and suspended the enforcement of Order 35782. We have also mentioned that on December 20, 1960, the Circuit Court for Marion County in the kind of case which the mandamus decision held was the exclusive means for testing the validity of Order 35782 held it and its two auxiliary measures

confiscatory and unconstitutional. Its decision was affirmed by this court June 13, 1962 *(Portland Traction Co. v. Hill)*. December 26, 1958, the commissioner "rescinded effective this date" the three challenged orders. We have sufficiently described the course of subsequent events to show that thereafter the circuit court ruled that Order 35782 was unconstitutional. The statements just made, which constitute a summary of some of the previous portrayals of facts, show that Order 35782 and its auxiliaries were stayed by an appeal undertaking within four days of the issuance of Order 35782. Shortly they were stayed by a stay proceeding as expressly provided in ORS 757.570. When the commissioner rescinded the three orders the stay bond was still in effect. June 13, 1962, this court, in a proceeding which was begun in Marion County, held the three orders unconstitutional.

In the Atlantic Coast Line case, the carrier, as we have seen, collected almost $300,000 in freight rates under an invalid schedule but was not required to make restitution because the rate (Cummer) which was succeeded by the invalid rate was confiscatory and the Interstate Commerce rate under which collections were made was just. In the present case, if a fine were imposed it would ratify an order (No. 35782) which this court had declared invalid and unconstitutional.

The assignment of error does not possess merit. The circuit court correctly decided this case. Its decree is affirmed.

McALLISTER, Chief Justice, and PERRY and GOODWIN, Justices, concur in this opinion.

O'CONNELL, J., dissenting.

In *Morgan v. Portland Traction Co.*, 222 Or 614, 331 P2d 344 (1958) we held that the commissioner's

order in question, even if confiscatory, was enforceable unless defendant stayed the enforcement of the order by the proceeding provided for in ORS 760.585.[1]

If this order was valid until properly challenged then the failure to comply with the order would empower the commissioner to invoke the penalty for noncompliance provided for in ORS 756.170. To hold otherwise would render meaningless our holding in the Morgan case. We would in effect be saying that the

---

[1] In the *Morgan* case, at pages 632–634, we said:

"For present purposes, we may assume that the Commissioner's order is confiscatory, and that a danger of daily confiscation exists while review of the order is pending. Still the Company is in no position to resist the enforcement of the order pending review in the statutory proceeding. A stay pending review of the order is available under ORS 760.585. We were told on the argument by counsel for the Company that he had filed a suit in Marion County to test the validity of the order, but that no application for a stay was made. Neither has there been any such application in the case pending in this court which involves particularly the Company's operation within the city of Portland. No explanation of the Company's failure to avail itself of the statutory stay has been vouchsafed us.

"If we are to assume for the purposes of this case that the Company's constitutional rights are in jeopardy, we must also assume that an adequate showing to that effect can be made in the circuit court for Marion County and that if this were done, that court would grant appropriate relief pending the ultimate decision of the case. It is true that such an application would be addressed to the discretion of the court (*State ex rel v. Duncan*, 191 Or 475, 230 P2d 773), but we will not assume that its discretion would be abused.

\* \* \* \* \*

"\* \* \* The statute imposed upon the Company the duty of compliance with the order, and this it knew. A way of avoiding compliance, if its claim of deprivation of constitutional rights is well founded or if the order is otherwise unreasonable or unlawful, was pointed out to it by the statute, but this way it chose to ignore. It took and clings to a position which, if sustained by the courts, would deprive the statute of most of its efficacy. We think that this position can not be sustained."

order was enforceable until challenged by a stay proceeding but that no statutory sanction is available to enforce the order. This would make no sense.

What we held in *Morgan v. Portland Traction Co.,* supra, is the law of the case and it is now binding upon us.[2] The present proceeding is an integral part of the original proceeding brought to enforce the commissioner's order and we must abide by what we have decided unless it could be said that our prior decision was patently wrong. I believe that the reasoning in the Morgan case is unassailable. It should bind us in the present stage of the proceedings.

DENECKE, J., dissenting.

I concur in Mr. Justice O'CONNELL's dissent.

The real issue here is whether a public utility can use self-help and refuse to comply with an order it believes to be invalid or whether it must restrict itself to judicial review of such regulation as exclusively provided by statute. Ordinarily, an invalid regulation or law is a nullity and does not have to be obeyed. Its invalidity can be established in an action brought to enforce the regulation or to enforce a penalty for violating the regulation. If a court decides the regulation is invalid, it will not be enforced, and no penalty can be imposed for refusing to comply with it. This proposition, however, does not necessarily apply to an order or law regulating public utilities.

---

[2] Bonfitto v. Nationwide Mutual Insurance Co., 195 Pa Super 546, 172 A2d 176 (1961); Girard Trust Co. v. City & County of Philadelphia, 359 Pa 319, 59 A2d 124 (1948). See also, State of Kansas v. Occidental Life Insurance Co., 95 F2d 935 (10th Cir 1938); Union Oil Co. v. Reconstruction Oil Co., 58 Cal App2d 30, 135 P2d 621 (1943); Tally v. Ganahl, 151 Cal 418, 90 P 1049 (1907); Overlander v. Overlander, 118 Kan 340, 235 P 93 (1925); U. S. Pipe, Etc., v. United Steelworkers of America, 37 NJ 343, 181 A2d 353 (1962).

The public interest in the effective regulation of a public utility may be so great that the legislature may provide that the utility may not make an ex parte decision that a regulation is invalid and, therefore, refuse to comply. The legislature may provide that the utility must continue to comply with the regulation until a court determines the validity or invalidity of the regulation. The specific holding in *Morgan v. Portland Traction Co.,* 222 Or 614, 331 P2d 344 (1958), was that the validity of the Commissioner's order could not be tested in a mandamus suit; the only kind of proceeding in which it could be tested was the proceeding provided by statute.

Mr. Justice LUSK, writing for a unanimous court, wrote in *Morgan v. Portland Traction Co.,* supra, at 627–628:

"* * * In our view, procedural due process is not infringed when the legislature requires a railroad to challenge the Commissioner's order through an exclusive and adequate review procedure and authorizes the courts to compel compliance with the order, even if invalid, until its validity is thus challenged.

"This conclusion is compelled by the holding of the Supreme Court of the United States in *Yakus v. United States,* 321 US 414, 64 S Ct 660, 88 L ed 834, where far more serious questions of procedural fairness were raised than are involved here. * * * The Court said [by Mr. Chief Justice Stone]:

" 'And we are pointed to no principle of law or provision of the Constitution which precludes Congress from making criminal the violation of an administrative regulation, by one who has failed to avail himself of an adequate separate procedure for the adjudication of its validity * * *.' 321 US at p 444."

The *Yakus* case involved exactly the issue involved here. Yakus failed to protest a price regulation. The statute provided that an appeal from the denial of the protest could be taken to the Emergency Court of Appeals. Instead, he used self-help; he did not comply with the regulation. A criminal action was brought against Yakus for sales above the maximum price. Yakus' conviction was affirmed. The court held he could not assert the unconstitutionality of the price regulation in the criminal proceeding; this could be done only in a proceeding provided by the statute.

This is not a new concept in the field of public utilities regulation. The Interstate Commerce Act has provided for 50 years that carriers must comply with orders of the commission. It provides for heavy penalties for noncompliance. With reference to these provisions of the Interstate Commerce Act, the United States Supreme Court has commented:

"* * * The carrier was not at liberty to take the law into its own hands and refuse submission to the order without the sanction of a court. It would have exposed itself to suits and penalties, both criminal and civil, if it had followed such a path. See, e.g., Interstate Commerce Act, 49 U.S.C. § 16 (8) (9) (10) (11), 49 USCA § 16 (8–11). Obedience was owing while the order was in force." *Atlantic Coast Line R. Co. v. Florida,* 295 US 301, 311, 55 S Ct 713, 79 L ed 1451 (1935).

SLOAN and O'CONNELL, JJ., join in this dissent.