Argued January 7, reversed and remanded February 26, 1969

## MT. HOOD STAGES, INC., *Respondent, v.* HALEY, PUBLIC UTILITY COM- MISSIONER, *Appellant.*

451 P. 2d 125

*Leon L. Hagen,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs

were Robert Y. Thornton, Attorney General, and Richard W. Sabin, Assistant Attorney General and Chief Counsel for the Public Utility Commissioner.

*Herbert M. Schwab,* Portland, argued the cause for respondent. With him on the brief were Robert D. Steinmetz and Rives & Schwab, Portland.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

GOODWIN, J.

The commissioner appeals from a judgment which set aside his order restricting a common carrier's charter-service authorization. The trial court awarded the carrier unrestricted charter authorization.

Mt. Hood Stages, Inc., hereafter designated as the carrier, in 1933 was granted route authorization to operate as a fixed-termini passenger carrier, on a fixed-schedule basis, between Portland and Klamath Falls, The Dalles and Klamath Falls, Eugene and Prineville, and between Bend and Burns, all within this state. In 1935, the carrier applied for, and was awarded, a permit to operate a charter service anywhere within the state.

In 1937, in connection with the carrier's application to acquire the Bend-to-Lakeview operating rights of another firm so as to extend fixed-schedule service, the commissioner issued an amended permit granting the fixed-schedule routes covered in the application. This permit, however, also contained a change in charter service. No reference to charter service had been made in the request for the change in route authorization, and accordingly no reference to charter

service had been made in any notice of the hearing. The matter of charter service does not appear to have been mentioned at the hearing. But when the new permit was issued, its terms changed the carrier's charter-service authorization from "anywhere in Oregon" to service "from any point on authorized fixed termini route to any point in Oregon, and from any point in Oregon to any point on authorized fixed termini route."

The record does not disclose whether the significance of the change in permit language with reference to charter service was noted at the time by the carrier, but the record does show that from 1937 until 1952 the carrier gave no evidence of displeasure with the amended permit. Under Oregon Laws 1933, ch 429, § 30, a carrier or any other person affected by a commission order had the right to challenge the order by a suit in equity. No such suit was ever filed.

In 1952, the file reveals, the carrier initiated correspondence with the commissioner in an effort to have the 1937 permit amended so as to restore the charter-service authorization to its 1935 form. Such a restoration would have permitted the carrier to offer charter service once again from any point in Oregon to any other point in Oregon. The commissioner declined to grant the amendment, and the issue remained relatively quiescent for several years. Meanwhile, the carrier's fixed-schedule routes were being extended from time to time, adding fixed-termini service to and from various points in Oregon. Eventually the carrier became an operating unit in a major interstate passenger-carrier system, operating within limited routes over much of the state. Charter authorization, necessarily, also increased as the number of fixed-termini routes increased.

Apparently, however, there were still some charter

trips in Oregon which the carrier desired to make but which could not be made under the terms of the 1937 amendment limiting charter authorization to service beginning or ending at a point on one of the carrier's fixed routes. During 1965, the carrier made thirteen charter-coach moves which the commissioner asserted were unauthorized. In the litigation which ensued for the collection of penalties, the carrier asserted that the 1937 amendment was void, and that under the carrier's 1935 permit the moves were authorized. When the matter came before the circuit court in a suit to set aside the commissioner's order assessing penalties, the court agreed with the carrier, and granted the affirmative relief which prompted this appeal.

The trial court set aside the 1937 order (insofar as it purported to limit the scope of the 1935 permit) on the ground that the crucial portion of the order had been entered without notice to the carrier. The absence of notice, if proved in a timely court proceeding, may have provided a substantive reason under Oregon Laws 1933, ch 429, § 30, for a court to order the commissioner to grant a hearing. The defect cannot, however, be asserted in a collateral attack in these proceedings.

The 1937 order, whatever may have been wrong with it as a matter of substantive law, was an order entered by the commissioner under the powers conferred by Oregon Laws 1933, ch 429. At all times from 1933 until the present, a statutory procedure has been provided for challenging any such order of the commissioner. See ORS 756.580 to 756.610; and see *Morgan v. Portland Traction Co.*, 222 Or 614, 331 P2d 344 (1958). Under the terms of the law then in effect (Oregon Laws 1933, ch 429, § 29), the order entered

by the commissioner was final, and binding, "until set aside as provided by law."

In *Morgan v. Portland Traction Co.*, we said: "It is true that the legislature has not said in so many words that the validity of the order may not be challenged in a proceeding brought to enforce it. 222 Or at 625. We then held, however, that the validity of an order could not be so challenged. An order of the commissioner promulgated under his statutory authority is not subject to collateral attack. Judicial review is available under ORS 756.505 to 756.610 and not otherwise.

In an effort to avoid the plain meaning of *Morgan v. Portland Traction Co.*, the carrier in this case asserts that the *Portland Traction* case turned on the fact that the order collaterally attacked had been entered after proper notices and hearing. We held in that case, nonetheless, that regardless of the grounds asserted for the invalidity of the order, the grounds could not be asserted in enforcement proceedings, but only in the statutory-review proceedings provided by law. We relied upon *Yakus v. United States,* 321 US 414, 64 S Ct 660, 88 L Ed 834 (1944), which held that even in a criminal prosecution for an alleged violation of price controls the accused could not challenge the validity of the regulation, but must follow the statutory route to judicial review. There is no difference in principle between the issue in *Morgan v. Portland Traction Co.* and the issue in the case at bar. We adhere to our former decision.

Reversed and remanded, with instructions to dismiss the suit.