517 P.2d 295 (1973)
VON WEIDLEIN INTERNATIONAL, INC. and Northwest Bottling Company, Inc., Oregon Corporations, Petitioners,
v.
Thomas F. YOUNG et al., Respondents.
Court of Appeals of Oregon.
Argued and Submitted November 27, 1973.
Decided December 24, 1973.
Rehearing Denied January 23, 1974.
Review Denied March 5, 1974.
*297 Alex L. Parks, Portland, argued the cause for petitioners. With him on the brief were White, Sutherland, Parks & Heath and David F. Rennie, Portland.
W. Michael Gillette, Solicitor Gen., Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Atty. Gen., John E. Moore, Chief Counsel, Criminal Justice & Special Investigation Division, and Al J. Laue, Asst. Atty. Gen., Salem.
Before SCHWAB, C.J., and THORNTON and TANZER, JJ.
TANZER, Judge.
This is a proceeding for judicial review of orders of the Oregon Liquor Control Commission which cancelled petitioners' liquor licenses. Petitioner Von Weidlein International, Inc.'s license entitled it to sell and distribute beer and wine, and petitioner Northwest Bottling Company had a distiller's license. Since the orders of cancellation were identical in substance, we consider them together.
The proceedings to revoke petitioners' licenses were brought pursuant to ORS 471.315(1)(b), which provides that "[t]he commission may cancel or suspend any license if it finds or has reasonable ground to believe * * * [t]hat the licensee * * * [h]as made any false representation or statement to the commission in order to induce or prevent action by the commission." In addition to their basic contention that there is insufficient evidence to support the commission's finding that they made such false representations or statements, petitioners raise two threshold constitutional issues.
First, petitioners contend that ORS 471.315(1)(b) is unconstitutionally vague and ambiguous in that it does not specifically require that the false representations or statements be "material" or that they be made "intentionally." This contention is based on the premise that the subsection is essentially a codification of common law fraud, and that the existence of an intentional, material misrepresentation, relied upon by the commission, is an integral element thereof.
The statute has previously been construed to require that the misrepresentation be material. Hart v. Oregon Liquor Control Com., 181 Or. 406, 409, 182 P.2d 364 (1947). We do not construe the statute to require that the misrepresentation be intentional. If an innocent but material misrepresentation were instrumental in the commission's decision to grant a license, it would be reasonable to allow the commission to revoke its decision when it found that the facts were not as represented.
Petitioners' contention that the statute is a codification of common law fraud and that revocation would be permissible only if the commission had in fact relied on the misrepresentation to its detriment, cf. Conzelmann v. N.W.P. & D. Prod. Co., 190 Or. 332, 225 P.2d 757 (1950), is incorrect. The statute permits revocation based on any misrepresentation made "in order to induce or prevent action by the commission." The evil aimed at by the statute is the possibility that the commission may be misinformed. It is not required that the commission actually believe the erroneous information. That being so, it is clear that the statute was not intended to be circumscribed by the elements of common law fraud.
Petitioners' second preliminary attack is upon the constitutionality of ORS 471.290(1)[1] which provides that a person applying for a liquor license may be compelled *298 as a prerequisite to provide to the commission the following information:
"* * * the name and address of the applicant, his citizenship, location of the place of business which is to be operated under the license, and such other pertinent information as the commission may require. * * *"
Petitioners contend that the phrase "such other pertinent information as the commission may require" is unconstitutional, presumably because it is so vague as to constitute an improper delegation of authority. In the alternative, they argue that because the Oregon Liquor Control Commission has not promulgated administrative rules as to what constitutes "other pertinent information," it may not require the disclosure of information other than name and address, citizenship, location, and similar matters.
In approaching this issue, we note the basic rule that when a statute is challenged as unconstitutionally vague, the first duty of a court is to interpret the statute, if possible, in a manner which will result in its being upheld. City of Portland v. White, 9 Or. App. 239, 495 P.2d 778, Sup.Ct. review denied (1972). Thus, we do not search for intolerable lengths to which the unconstrued statute might be extended; rather, we attempt to confine the broad language within reasonable bounds and thereby give effect to its provisions.
A statute granting administrative powers is sufficient if it provides guidance to the agency to which is delegated the duty to apply the statute. Bergford v. Clack. Co./Trans. Serv., Or. App., 97 Adv.Sh. 2319, 515 P.2d 1345 (decided November 19, 1973). The information sought by the commission and furnished by petitioners all comes within the meaning of ORS 471.295(4)(c), (f) and (i),[2] which enables the commission to deny a license if it finds that the applicant has been convicted of a felony, that he is not of good repute and moral character, or that he is not financially responsible. In short, ORS 471.290 authorizes the commission to require sufficient information to enable it to perform its duty under ORS 471.295.
Petitioners also argue that the commission may not require "other pertinent information" because it has not promulgated administrative regulations. While it is clear that the commission cannot deny a license without first establishing regulatory standards, Sun Ray Dairy v. OLCC, Or. App., 517 P.2d 289 (decided this day), the information at issue in this case was obtained pursuant to a specific statutory mandate, and the existence or not of regulations is not material. Furthermore, petitioners' complaint comes late. The information was given without complaint or protest, the licenses were granted, and petitioners received the benefit of the law they now challenge. The significant question at this stage of the proceedings, under ORS 471.315(1)(b) which specifically authorizes the cancellation of a license once granted, is the truth or falsity of petitioners' representations.
Petitioners' major contention on appeal is that the commission's findings of fact which were the basis for the orders of cancellation are not supported by substantial evidence. There are nine findings of fact. Findings 1, 2 and 3 relate to representations made by Mr. Charles Weidlein, president of petitioner corporations, as to *299 the business history of petitioner Von Weidlein International, Inc. Findings 4, 5, 6 and 7 relate to representations made by Mr. Weidlein as to his personal data. Finding No. 8 is that the representations were made wilfully and with the intent that the commission rely upon them, and finding No. 9 is that the commission did in fact rely upon the representations.
With regard to the first group of representations, the evidence produced at the hearing showed that among the items supplied to the commission by Mr. Weidlein in support of the license applications was a three-page document entitled "History of Business," which purported to summarize the business history of Von Weidlein International, Inc. Representations contained in that document constituted the basis for findings of fact 1 through 3.
Finding of fact No. 1 is that Mr. Weidlein falsely represented Von Weidlein International, Inc. to be "a recognized international pharmaceutical house and surgical supply firm specializing in export of pharmaceuticals for human and veterinary use and of surgical and medical supplies." A reading of the "History of Business" document makes it clear that this representation was made. The only question is whether the representation was false. The secretary-treasurer of both petitioner corporations testified that the firms had not exported anything, and that they had never had any accounts receivable in connection with importing or exporting activity. Mr. Weidlein testified that the only thing ever imported was a number of acupuncture needles, with a total value of $250. While there is some room for disagreement as to the interpretation to be placed on the statement that a firm "has been recognized as an international pharmaceutical house specializing in export," it cannot be seriously contended that that statement accurately describes the business operations of Von Weidlein International, Inc. There is substantial evidence to support the commission's finding that that representation was false.
Finding of fact No. 2 is that Mr. Weidlein falsely represented that Von Weidlein International, Inc. exports products under agreement with ten named firms. Again, there is no contention that the representation was not made, and the only issue is that of falsity. Neither Mr. Weidlein nor the secretary-treasurer of Von Weidlein International, Inc. could point to any actual exporting done for any of the ten firms. The only thing that could possibly be construed as an export agreement was an "agreement in principle" with one of the firms to do exporting in the future. When asked what was meant by his representation that "Von Weidlein International exports," Mr. Weidlein responded:
"That means that we are capable and have the connections to export these products. When you read a sign, if a guy builds a new Chevrolet dealership, puts a sign up that says in the paper, `I sell Chevrolets,' does that mean he has sold one? I don't know. I'm not an attorney."
The commission's finding that Mr. Weidlein's representations as to his company's business arrangements were false is supported by substantial evidence in the record.
Finding of fact No. 3 is that Mr. Weidlein falsely represented that Von Weidlein International, Inc. exports various items from the People's Republic of China, West Germany and Mexico. The evidence shows that the firm had an agreement with one of the two West German firms listed in the "History of Business," but that the Food and Drug Administration prevented any import/export activities between them. There is no evidence that Von Weidlein exported anything from the other West German firm or from Mexico. As to exports from China, this refers to acupuncture needles, the extent of which business is discussed above under finding of fact No. 1. The use of the word "exports" connotes an existing business activity. The disparity between what was represented *300 and what was shown to be the case constitutes substantial evidence to support the commission's finding that the representations were false.
Finding of fact No. 4 is that Mr. Weidlein falsely represented that he had acted as consultant to presidents of the United States. In one of the documents submitted to the commission in support of petitioners' license applications, Mr. Weidlein stated that he had served as "consultant" to 55 different entities, including companies, states, federal agencies, and presidents of the United States. At the hearing Mr. Weidlein testified that he had met Presidents Eisenhower and Kennedy on one occasion each, but these were apparently chance encounters while Mr. Weidlein was discussing matters with presidential staff personnel. Mr. Weidlein conceded at the hearing that it would have been more accurate to characterize himself as a consultant to "the presidents' offices," rather than to presidents. While this representation was a stretching of truth, obviously designed to portray Mr. Weidlein as a man of prominence and influence, the commission concedes that this misrepresentation would not by itself justify revocation of petitioners' licenses. However, considered together with the other, more serious misrepresentations made by Mr. Weidlein, it is significant.
Finding of fact No. 6 relates to the same representation as did finding No. 4. In addition to stating that he had served as consultant to presidents of the United States, Mr. Weidlein represented that he had served as a consultant to 54 companies, states, federal agencies, and foreign countries. This representation was found to be false by the commission. At the hearing, Mr. Weidlein testified that he had been compensated for his services by only 11 of the named entities. He was given an opportunity to explain what he had done as a non-paid consultant in the other 43 situations, but did so as to only one of the 43. Thus, there was substantial evidence to support the finding that Mr. Weidlein had misrepresented his consulting experience.
Finding of fact No. 5 is that Mr. Weidlein falsely represented to a commission officer that he had had only one arrest (NSF check), when in fact he had two such arrests. There was a direct conflict in the testimony on this point. Mr. Weidlein claimed that he told the commission officer about both arrests, while the officer testified that he specifically asked Mr. Weidlein whether he had been arrested at any time other than the occasion which he acknowledged, and that Mr. Weidlein replied "No." Where there is such a conflict in evidence, there is necessarily substantial evidence to support the commission's finding.
Finding of fact No. 7 is that Mr. Weidlein misrepresented his date of birth. There is no dispute but that Mr. Weidlein did list an incorrect birth date. As with the finding regarding consultation to presidents of the United States, the commission concedes that this might not be a basis for revocation by itself, but that it is material when considered together with all of Mr. Weidlein's other misrepresentations.
Findings of fact 8 and 9 are, respectively, that the above misrepresentations were made intentionally and that the commission relied upon the misrepresentations in granting the licenses. While these findings were unnecessary to a revocation, there is substantial evidence to support each of them.
Petitioners' final assignment of error relates to certain procedural irregularities in the proceedings following the revocation hearing. Specifically, petitioners complain that the commission did not make and serve upon them proposed findings of fact and conclusions of law as required by ORS 183.460.[3] The parties stipulated at oral argument *301 that each member of the commission had read the whole record. Therefore, ORS 183.460 is not applicable.
Affirmed.
NOTES
[1] ORS 471.290(1) provides:

"(1) Any person desiring a license or renewal of a license shall make application to the commission upon forms to be furnished by the commission showing the name and address of the applicant, his citizenship, location of the place of business which is to be operated under the license, and such other pertinent information as the commission may require. No license shall be granted or renewed until the provisions of the Liquor Control Act and the regulations of the commission have been complied with."
[2] ORS 471.295(4)(c), (f) and (i) provides:

"The commission may refuse to license any applicant if it has reasonable ground to believe any of the following to be true:
"* * *
"(4) That the applicant:
"* * *
"(c) Is not a citizen of the United States, or is incompetent or physically unable to carry on the management of the establishment proposed to be licensed.
"* * *
"(f) Is not of good repute and moral character.
"* * *
"(i) Is not possessed of or has not demonstrated financial responsibility sufficient to adequately meet the requirements of the business proposed to be licensed."
[3] ORS 183.460 provides:

"Whenever in a contested case a majority of the officials of the agency who are to render the final order have not heard the case or considered the record, the order, if adverse to a party, but not including the agency itself, shall not be made until a proposed order, including findings of fact and conclusions of law, has been served upon the parties and an opportunity has been afforded to each party adversely affected to file exceptions and present argument to the officials who are to render the decision, who shall in such case personally consider the whole record or such portions thereof as may be cited by the parties."