Argued July 23, affirmed September 13, 1976

## SCHOFIELD, *Petitioner,*
*v.*
## PUBLIC WELFARE DIVISION, *Respondent.*
## (No. 2-15/02-HETO72-0, CA 5832)

554 P2d 552

 

*Mary L. Lewis,* Medford, argued the cause for petitioner. With her on the brief was Jackson County Legal Services, Medford.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Petitioner, an ADC[1] recipient, seeks judicial review of a Public Welfare Division order requiring her to comply with certain job-search requirements imposed by the Division or face a reduction in her public assistance grant. She is enrolled, on her own initiative, as a third-year college student in an apparent attempt to acquire the education and training necessary to become a teacher. The local welfare office ordered petitioner to participate in the Division's work program for all public assistance recipients. PWD II-II-E (PWD Staff Manual, vol II (ADC/G (rev Dec 1974)).[2] She declined to do so because she feels that participation would interfere with or prevent completion of her teacher training, and that this fact constitutes "good cause"[3] for refusing to participate.

In challenging the Division's order petitioner makes four contentions: (1) the Division has no statutory authority to establish a state job-search program for ADC recipients; (2) the Division's program is in conflict with the federal WIN[4] program; (3) that state regulation defining good cause for failure to accept job-search referrals is so vague and indefinite that it is unenforceable; and (4) the hearing officer's determination that petitioner did not have good cause for refusing job referrals is not based on substantial evidence.

Petitioner first contends that there is no statutory authority to establish a state job-search program. She assumes the Division's job-search program is a "Community Work and Training Program," as that phrase is

---

[1] Termed "Aid to Families with Dependent Children" (AFDC) in federal legislation. Social Security Act, 42 USC § 601 et seq (76 Stat 185, Title I, Part A, § 104(a)(3) (1962)).

[2] PWD II-II-E was revised again on March 16, 1976. However, unless otherwise indicated, all references will be to the December 1974 revision.

[3] Petitioner sought to justify her refusal to participate under PWD II-II-E, 9(g)(3), which is quoted infra.

[4] "WIN" stands for "Work Incentive Program" and is a part of the "Aid to Families with Dependent Children" program. It is designed to help these recipients to become self-supporting.

defined by ORS 411.855(1),[5] and then claims that the legislature has only authorized such Community Work and Training Programs for recipients of general assistance.[6] Actually, Community Work and Training Programs have also been authorized for ADC recipients. ORS 418.095. However, we are not convinced that the Division's job-search requirement constitutes a Community Work and Training Program.[7] The job-search requirement appears to simply be part of the Division's procedure for determining an individual's eligibility for ADC grants. The Division has decided that eligibility is to be influenced by a recipient's ability or inability to obtain satisfactory employment. PWD II-II-E. The job-search requirement is one method of ascertaining a recipient's employability.

■ The Division has been given broad, exclusive authority to "determine eligibility for all public assistance." ORS 411.113. *See also* ORS 418.040. It has also been charged with administering the ADC program in a manner which fosters maximum parental self-support and maintains and strengthens family life for the children. ORS 411.120(4). The Division's decision to condition ADC eligibility on, among other things,

---

[5] " 'Community work and training program' means a program of a constructive nature designed to conserve work skills and to develop new skills of applicants and recipients of public assistance, pursuant to a plan jointly entered into by the division and a public entity under which such public entity undertakes to provide work or training to applicants or recipients of public assistance, who are required to participate without compensation in such program, and to provide supervision and control over such work or training." ORS 411.855(1).

[6] This authorization is contained in ORS 411.860. Both general assistance and ADC grants are forms of "public assistance." ORS 411.010(3). While the ADC program is specially designed to aid families with dependent children, ORS 418.035 et seq, general assistance "means assistance or service of any character provided to needy persons not otherwise provided for * * *." ORS 411.010(2).

[7] A Community Work and Training Program, as authorized by ORS 418.095, would require an ADC recipient to work for a public entity without compensation in order to "conserve work skills and to develop new skills." ORS 411.855(1). Participants in the Division's job-search program are compensated and need not necessarily work for a public entity. *See* PWD II-II-E.

participation in a job-search program is a proper exercise of its authority to determine ADC eligibility standards. The job-search program is also consistent with the ADC program's purpose, as described in ORS 411.120(4), and with legislative policy aimed at the employment of parents receiving ADC. *See* ORS 418.085.[8]

■ Petitioner next argues that the Division's job-search program conflicts with the federal WIN program. Because ADC grants consist largely of federal matching funds, the rules implementing the Division's program are only valid if they meet the requirements of the applicable federal laws and regulations promulgated pursuant to them. *Bunting v. Juras,* 11 Or App 297, 298-99, 502 P2d 607 (1972). The test for determining whether a state program satisfies the requirements of WIN is set forth in *New York State Dept. of Social Services v. Dublino,* 413 US 405, 93 S Ct 2507, 37 L Ed 2d 688 (1973).

■ In *Dublino,* the Supreme Court considered a claim that New York Work Rules analogous to the Division's job-search program conflicted with, and were thus preempted by, certain WIN requirements. The court upheld the New York program even though it constituted a state-imposed condition for continued assistance, stating that

"* * * '[s]o long as the State's actions are not in violation of any *specific provision* of the Constitution or the Social Security Act,' the courts may not void them. * * * Conflicts, to merit judicial rather than cooperative federal-state resolution, should be of *substance* and not

---

[8] "During any period in which aid may be granted with respect to, or on behalf of, a dependent child as defined in paragraph (a) of subsection (1) of ORS 418.070, the Public Welfare Division and the Administrator of the Employment Division shall enter into cooperative arrangements looking toward employment of the unemployed parent of any such child, shall provide for the registration and periodic reregistration of such parent at employment offices established pursuant to ORS 657.705 to 657.725 and shall, with respect to such parent, effect maximum utilization of the job placement services and other services and facilities of such offices." ORS 418.085.

merely trivial or insubstantial * * *." 413 US at 423, n 29. (Emphasis supplied and citations omitted.)

Petitioner concedes that there are no specific conflicts between provisions of WIN and the Division's program, but asserts that the program is nonetheless invalid because the existence of the state job-search requirement may indirectly frustrate the goals of the WIN program. While we doubt that this alleged incompatibility exists, the point need not be decided here since *Dublino* expressly held that state actions which do not specifically conflict with the WIN program are not preempted by the federal provisions.

■ Petitioner's third argument is that a Division regulation defining good cause for failure to accept job-search referrals is void for vagueness. At the time of the hearing officer's order, the portion of the regulation relevant here stated:

"(g) No individual shall be required to accept employment if * * *

"(3) The job offered would interrupt a program in progress for permanent rehabilitation or self-support * * *." PWD II-II-E, 9.

We find this regulation sufficiently precise given the wide variety of circumstances to which it must be applied. As we explained in *Palen v. State Bd. Higher Education,* 18 Or App 442, 525 P2d 1047, Sup Ct *review denied* (1974):

" 'The root of the vagueness doctrine is a rough idea of fairness.' * * * The ultimate criterion being fairness, the degree of precision required in statutes and regulations varies somewhat depending upon the context * * *." 18 Or App at 446. (Citations omitted.)

Here, the Division's regulation adequately informed petitioner of the rehabilitation and self-support criteria which would be used to evaluate good cause. Petitioner's reliance on *Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973), is misplaced. In that case an administrative agency had no regulations defining the standards controlling the grant or denial of certain licenses, while here adequate regulations have been

promulgated by the Division. *See Sun Ray Drive-In Dairy v. OLCC,* 20 Or App 91, 530 P2d 887 (1975).

■ Finally, petitioner asserts that the hearing officer did not rely on substantial evidence in deciding that petitioner lacked good cause for refusing job referrals. The hearing officer found that college attendance would not be rehabilitative since petitioner had been engaged in college level work for approximately 15 years. He also concluded that petitioner could be self-supportive without a teaching credential because she had "substantial work experience," including work in the electronics and telephone industries. Based on these findings and the record as a whole we find that the hearing officer's decision that good cause did not exist for petitioner to refuse job referrals is supported by the evidence.

Affirmed.

**THORNTON, J.,** specially concurring.

While I am in agreement with the result reached in the majority opinion, my concurrence is for a different reason with respect to the first point discussed.

In my view ORS 418.085, which is set out in full in note 8 of the majority opinion, is dispositive on petitioner's first contention, namely, that the Public Welfare Division has no statutory authority to establish and carry out a statewide job-search program.[1] If it were not for ORS 418.085 I would agree with petitioner's contention. Contrary to the view of the majority on this point, I do not think that ORS 411.113, which authorizes the Division to fix conditions of eligibility for welfare assistance, would authorize the Division to embark upon a statewide job-search program for welfare recipients. For a state agency to establish and carry out a major new activity such as a statewide job-search program is a far cry from merely establish-

---

[1] This section was not cited in either brief and was apparently overlooked by both parties.

ing general standards of eligibility for welfare recipients. *See, Gouge v. David et al.,* 185 Or 437, 202 P2d 489 (1949); *Sunshine Dairy v. Peterson et al.,* 183 Or 305, 193 P2d 543 (1948); *Hawkins v. Bd. of Medical Exam.,* 23 Or App 320, 542 P2d 152 (1975). In all of these cases the courts struck down similar attempts by state agencies to assert regulatory authority without proper legislative authorization. Here ORS 418.085 supplies the necessary authority in my view.