Argued October 29, affirmed December 20, 1976, reconsideration denied January 26, petition for review allowed May 4, 1977
See later volume Oregon Reports

FITCH, *Petitioner,*

*v.*

PUBLIC WELFARE DIVISION,
*Respondent.*

(No. 2-35/01-UZP 814-6, CA 6459)

557 P2d 253

*Gary Roberts,* Portland, argued the cause for petitioner. With him on the briefs was Legal Aid Service, Multnomah Bar Association, Inc., Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Petitioner, an ADC[1] recipient, appeals the order of the Public Welfare Division hearings officer which suspended a portion of her ADC grant for a period of 90 days because she had refused a job referral without good cause.

Petitioner raises four assignments of error:

1. There was no substantial evidence in the record to support the conclusion petitioner possessed the requisite qualification for the job she refused.

2. The 90 day suspension of petitioner's ADC grant was contrary to certain provisions of the federal Social Security Act, in that it automatically suspended petitioner's grant for 90 days without a finding she refused to participate in WIN[2] for that period of time.

3. The order is unconstitutional because it reflects an irrebuttable presumption that petitioner refused to participate in the WIN program for a 90 day period.

4. The order is contrary to provisions of the Social Security Act because it suspended her grant without according petitioner a 60 day counseling period as provided in the WIN program.

The Work Incentive Program requires states to incorporate WIN into their ADC plans as a condition for receipt of federal matching funds. Every ADC recipient, as a condition of eligibility for aid, must register in the WIN program unless they fall within specific exceptions. 42 USC § 602(a)(19)(A) (Supp V, 1975). The cooperating state is to provide "such health, vocational rehabilitation, counseling, child care, and other social and supportive services as are necessary to

---

[1] "ADC" Aid to Dependent Children is denominated "Aid to Families with Dependent Children (AFDC) in the Social Security Act. 42 USC § 601 (Supp V, 1975).

[2] "WIN" stands for "Work Incentive Program" part of the Aid to Families with Dependent Children program codified in 42 USC § 601 et seq. (Supp V, 1975).

enable" recipients, who have registered with WIN, to accept employment. After the required services are provided the state is to certify those individuals who are ready for employment. 42 USC § 602(a)(19)(G) (Supp V, 1975).

An individual certified to WIN as ready for employment who refuses, without good cause, to accept employment in which he is able to engage will be subject to a reduction in his ADC benefits. The suspension of benefits will be for so long as the individual refuses to accept employment. The reduction in aid does not take place, however, for a period of 60 days, if during that period the recalcitrant recipient accepts counseling designed to encourage him to accept employment. 42 USC § 602(a)(19)(F) (Supp V, 1975).

The state, through Public Welfare Division, has developed a work program for ADC recipients who have registered for WIN. PWD II-II-E (PWD Staff Manual, Vol II (revised 3-16-76)). The work plan provides job search facilities for those recipients who are registered with WIN but who are not certified through the WIN program. If the uncertified recipient refuses to accept a referral to a suitable job placement, Public Welfare Division, after a hearing and a finding there was no good cause for refusal, imposes sanctions. The rules embodying the state work program incorporate, by reference, WIN criteria for determining if good cause existed for refusing the employment referral. PWD II-II-E-8. The sanctions are the same as those applied under the WIN program; i.e., the individual's needs will not be taken into account in calculating the total benefits of the ADC grant. PWD II-II-E-8. There sanctions are applied for a period of 90 days in the case of an uncertified registrant. PWD II-II-E-9-a(4). The 60 day counseling period prior to suspension of benefits which is accorded to certified WIN registrants is not available to uncertified registrants.

■ Petitioner in her first assignment of error contends there was not substantial evidence to support the hearings officer's conclusion that petitioner possessed the required qualifications for the job to which she was referred. Agency criteria specify the job must be related to the capability of the participant to accomplish the assignment. A recitation of the evidence presented at the hearing is unnecessary. There was conflicting evidence respecting petitioner's job aptitude. Where there is a conflict in the evidence there is necessarily substantial evidence to support this finding. *Von Weidlein/N.W. Bottling v. OLCC,* 16 Or App 81, 514 P2d 560, 515 P2d 936, 517 P2d 295 (1973), Sup Ct *review denied* (1974).

■ Petitioner's remaining assignments of error raise the issue of conflict between the Public Welfare Division job search plan and the federal WIN program. The United States Supreme Court in *NYS Dept. of Social Services v. Dublino,* 413 US 405, 93 S Ct 2507, 37 L Ed 2d 688 (1973), held the federal WIN program did not preempt local work plans if the state plan does not specifically conflict with provisions of the WIN program. We held in *Schofield v. Public Welfare Div.,* 26 Or App 709, 554 P2d 552 (1976), the state job search program (PWD II-II-E) was not in conflict by its general terms, with WIN. The court in *Dublino* and we in *Schofield* were not required to decide specific conflicts between provisions of the federal and state programs. If a conflict does exist between specific provisions of the two plans the local provisions are voided by the federal supremacy clause.

■■ Petitioner was determined to be an unassigned, uncertified WIN registrant by the hearings officer, a finding not challenged at the hearing or on appeal. In this status petitioner is not available for the portion of the WIN program dealing with job referrals, and not subject to WIN sanctions or WIN counseling. The state job search program is designed to deal with those recipients who are required to register with the WIN program but who are not certified.

■ The WIN program has as its initial aim to provide employment for recipients who are employable or to place a person not ready for employment into a training program. The local work plan operates to cover those persons not certified, and not in a WIN training program.

■ Petitioner argues she met all the qualifications for certification and consequently should have been listed as a certified WIN registrant entitled to the protections embodied in the Social Security Act. We do not agree that certification is merely a formality that automatically follows registration in the WIN program. It is an administrative decision reposed in the Separate Administrative Unit of the state welfare agency (45 CFR § 224.22(e), (1975)) and requires application of specific criteria to the individual cases of ADC recipients. As noted earlier petitioner did not challenge her classification as an uncertified WIN registrant. We decline to review that finding.

Since petitioner is not classified as a certified WIN registrant she is subject to the state's work program. It follows if the specific provisions of the state program are in conflict with specific provisions of the Social Security Act they must be voided and the administrator's order reversed.

In *Dublino* the Supreme Court set forth a decisional approach in determining the compatibility of state and federal plans:

"In considering the question of possible conflict between the state and federal work programs, the court below will take into account our prior decisions. Congress 'has given the States broad discretion,' as to the AFDC program, * * * and '[s]o long as the State's actions are not in violation of any specific provision of the Constitution or the Social Security Act,' the courts may not void them. * * * Conflicts, to merit judicial rather than cooperative federal-state resolution, should be of substance and not merely trivial or insubstantial. * * *" (Citations omitted.) 413 US 405, 423, n 29.

The variations between the state and federal pro-

grams material here are (1) the sanctions are imposed automatically for 90 days under the state regulations and (2) there is no 60 day counseling period prior to the sanctions going into effect.

In determining if there is a conflict we must keep in mind that congress has given the states broad discretion in operation of the ADC programs. *Jefferson v. Hackney,* 406 US 535, 92 S Ct 1724, 32 L Ed 2d 285 (1972). The Supreme Court recognized in *Dublino* the Social Security Act allows for complementary work programs to supplement the federal WIN program and speaks in terms of cooperative federalism in administration of the ADC program. In order for a variation to be a conflict of substance it must tend to frustrate a specific goal or provision of the WIN program.

The state's parallel job search plan has a common purpose with WIN to induce ADC recipients to become fully employed. *Schofield v. Public Welfare Div., supra,* ORS 411.120(4). The slight differences in approach in applying the incentives to work are not incompatible. WIN applies the sanction for an indeterminant period, i.e., for so long as the individual refuses to accept employment. The state regulations impose the same sanction for a determinant period of 90 days and without a prior 60 day counseling period.

These procedures fall within the ambit of legitimate state regulation even though they may constitute conditions for continued public assistance. *NYS Dept. of Social Services v. Dublino, supra.* They do not constitute additional requirements of eligibility which exclude from ADC benefits those persons who the Social Security Act expressly provides would be eligible. This was the basis for application of the federal "supremacy clause" to invalidate state regulations used in *Carleson v. Remillard,* 406 US 598, 92 S Ct 1932, 32 L Ed 2d 352 (1972); *Townsend v. Swank,* 404 US 282, 92 S Ct 502, 30 L Ed 2d 448 (1971); and *King v. Smith,* 392 US 309, 88 S Ct 2128, 20 L Ed 2d 1118 (1968), cited by petitioner.

Having determined the Public Welfare Division job search plan is compatible with the WIN program in the enumerated particulars, it follows the local program is not invalid as applied to petitioner. Her second assignment of error states in substance the order applying Public Welfare Division work rules automatically suspends her ADC benefits without a finding she refused to participate in WIN for 90 days. The specific provisions imposing sanctions not being in conflict with federal law or regulations need not be the same as the federal law or regulations. The Public Welfare Division is empowered to apply the criteria of the state program which does not require the finding sought by petitioner. Automatic imposition of a 90 day suspension as an incentive to induce ADC recipients to work is a policy decision the Division is empowered to make.

Petitioner's third assignment of error likewise depends on application of WIN criteria for vitality. The order does not "reflect an irrebuttable presumption" but merely applies the requirements of the Public Welfare Division work program.

Petitioner's fourth assignment of error must also fall. The decision not to include a 60 day counseling period in the state work plan comparable to such provision in the WIN program is another policy decision. The lack of such provision does not, as we have said, conflict with the Social Security Act.

Affirmed.