The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Kevin ALEXANDER,
Defendant-Appellant.

No. 81SA363.

Supreme Court of Colorado,
En Banc.

May 9, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Dean, Martin, Mitchell & Schwartz, Daniel W. Dean, Fort Collins, for defendant-appellant.

QUINN, Justice.

The defendant, Kevin Alexander, appeals his conviction for violating section 18–5–302(2), C.R.S.1973 (1978 Repl.Vol. 8), which prohibits a person from knowingly making "a false representation as to the existence of an ownership interest in land which he has as a seller . . . and which is relied upon." [1] The jury found the defendant guilty of this class 5 felony on the basis of his statement to a prospective purchaser that he "owned" a parcel of land when in reality he had merely contracted to purchase the land and had not yet acquired title. The defendant's major arguments are that section 18–5–302(2) is unconstitutionally vague, that there was insufficient evidence to submit the charge to the jury, and that the jury instructions were inadequate.[2] We affirm the judgment.

---

1. This appeal was transferred to this court because of the defendant's constitutional challenge to section 18–5–302(2), C.R.S.1973 (1978 Repl.Vol. 8). *See* sections 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S.1973.

2. The defendant also argues that the trial court erred in finding probable cause at the preliminary hearing. Absent unusual circumstances not present here, however, any issue as to the presence of probable cause is rendered moot by the jury's guilty verdict.

"Resolution of these questions must be made prior to trial in order to avoid the anomalous

## I.

On November 8, 1979, an information was filed in the Larimer County District Court charging the defendant with a violation of section 18–5–302(2). The information, as later amended, charged that between February 10, 1979, and July 25, 1979, the defendant knowingly made a false representation as to the existence of an ownership interest in land, upon which John Forsyth relied. Trial was held to a jury on April 28 and 29, 1980. The prosecution's evidence established that on December 20, 1978, the defendant entered into a written contract to purchase from Richard Busteed 160 acres of land located near Wellington, Colorado, for a price of $100,000. The contract provided that Busteed would tender a general warranty deed to the defendant on January 18, 1979, with possession of the premises to be delivered upon closing. The Busteed contract credited the defendant with a $2,000 earnest money payment, with the balance to be paid off by a $23,000 cashier's check at closing and three promissory notes. According to Busteed's testimony, the $2,000 earnest money was never paid in cash but was credited to the defendant on the basis of Busteed's use of the defendant's car over a period of ten months and also other consideration paid by the defendant to Busteed on two other contracts. Sometime in February of 1979 a lien was filed against Busteed's property, and Busteed, thinking that he ultimately would remove the lien, convinced the defendant to extend the contract closing date to June of 1979. Busteed, however, was unable to convey clear title even on the second scheduled date.

In the early part of 1979 the defendant told John Forsyth, whose grocery store he patronized, that he "had purchased" and "owned" 160 acres of land near Wellington, Colorado, which he intended to divide into four forty acre parcels for resale. Forsyth decided to purchase one of the forty acre parcels, and on March 8, 1979, entered into a contract with the defendant. The contract provided for a purchase price of $29,000, of which $1,000 was receipted for by the defendant and $21,700 was to be paid in monthly payments of $286.78.[3] The contract stated that the defendant would furnish Forsyth an abstract of title or a title insurance commitment on or before March 5, 1979, and that "the seller shall execute and deliver a good and sufficient general warranty deed to said purchaser on March 10, 1979."

Notwithstanding the terms of the contract, Forsyth was unclear in his testimony about the precise time at which he believed he was to receive title to the property. At one point he stated that title would pass when his downpayment installments reached $6,300, and at another point he stated that "the property would close ... within 90 days after the signing of the contract." A receipt admitted into evidence indicated that between March 9 and July 25, 1979, Forsyth made a series of six payments to the defendant, totaling $6,050. During this period the defendant reiterated that he owned the property and never mentioned that he was merely involved in the

---

situation where a defendant may be found guilty at trial, and then attempt to have the conviction reversed for a preliminary hearing on probable cause. The illogic of this anomaly is further exemplified by the observation of Judge McGowan, writing for the District of Columbia Circuit Court of Appeals, when he states:

'Where, as here, the accused has been found guilty of those charges in a full-scale trial that we have otherwise found to be free of error, the chances that he could persuade a magistrate that no probable cause exists for his continued detention are perhaps not ungenerously to be characterized as speculative. *Blue v. United States,* 342 F.2d 894 (D.C.Cir.1964) [*cert. denied,* 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965)']." *Kuypers v. District Court,* 188 Colo. 332, 335, 534 P.2d 1204, 1206 (1975).

*Accord People v. Horrocks,* 190 Colo. 501, 549 P.2d 400 (1976). We consider the probable cause issue to be moot, and we accordingly do not discuss it further.

3. Although the contract specified that the balance of $6,300 ($29,000 minus $22,700) was to be paid in cash at the time of closing, Forsyth made a series of payments totaling $6,050 during the four month period following the contract date, all of which were accepted by the defendant.

process of buying it from Busteed. Forsyth eventually asked the defendant to schedule a closing date for the transfer of title, but the defendant delayed with a series of excuses. When Forsyth became seriously concerned, he went to the county register of deeds office and determined that the defendant did not own the land. James P. Thompson, Larimer County Clerk and Recorder, also testified for the prosecution. He related that the record title to the Wellington property was in Richard Busteed from June 13, 1977, through March 18, 1980.

The defendant's only witness was Richard Busteed, who testified that he ultimately sold forty acres of the Wellington property directly to Forsyth on the terms set forth in Forsyth's contract with the defendant and with credit for the payments Forsyth had made to the defendant. The court denied the defendant's motion for a judgment of acquittal at the end of all the evidence and, over the defendant's objection, instructed the jury on the elements of the charge as follows:

"A person commits the crime of false representation concerning ownership of land if:

"He knowingly makes a false representation as to the existence of an ownership interest in land which he has as a seller and which is relied upon.

"The elements of the crime of false representation concerning ownership of land are therefore:

(1) Knowingly making a false representation as to the existence of an ownership interest in land

(2) Which he has as a seller and

(3) The false representation is relied upon."

The defendant supplemented his objection with a specific request to modify the third element to require that the false representation be "reasonably or justifiably relied upon." This request was denied, but the court did instruct the jury that reliance upon a false representation exists if the alleged victim, believing the representation to be true, takes action which he otherwise would not have taken or decides against taking action which he otherwise would have taken. The court rejected another instruction, tendered by the defendant, which particularized the meaning of "justified reliance" in terms of the victim's duty to investigate. Also rejected by the court were the defendant's tendered instructions on various principles of property law, such as equitable conversion, the right to convey when out of possession, the right to immediate possession upon conveyance, and the doctrine of after acquired title. The jury returned a guilty verdict to the charge, and this appeal followed.

## II.

■ We first consider the defendant's argument that section 18–5–302(2), C.R.S. 1973 (1978 Repl.Vol. 8), is unconstitutionally vague as violative of due process of law, *U.S.Const.* Amend. XIV; *Colo.Const.* Art. II, Sec. 25. Basic and long established rules must guide our analysis of the defendant's claim. A statute is presumed to be constitutional, and the burden falls upon the party attacking the statute to establish its unconstitutionality beyond a reasonable doubt. *E.g., Bollier v. People,* 635 P.2d 543 (Colo.1981); *People in the Interest of C.M.,* 630 P.2d 593 (Colo.1981); *People v. Summit,* 183 Colo. 421, 517 P.2d 850 (1974). If the challenged statute is susceptible of different constructions, one of which comports with constitutional requirements, the constitutional construction must be adopted. *E.g., People ex rel. City of Arvada v. Nissen,* 650 P.2d 547 (Colo.1982); *People v. Smith,* 638 P.2d 1 (Colo.1981); *People v. Fitzgerald,* 194 Colo. 415, 573 P.2d 100 (1978). "Also, it must be borne in mind that due process of law has never required mathematical exactitude in legislative draftsmanship." *People ex rel. City of Arvada v. Nissen, supra* at 550. Thus, while a statute must be sufficiently specific to give fair warning of the proscribed conduct, it often must remain sufficiently general "to address the essential problem under varied circumstances." *Colorado Auto & Truck Wreckers v. Department of Revenue,* 618 P.2d 646, 651 (Colo.1980). The critical inquiry in a void for vagueness challenge is

whether the law in question "either forbids or requires the doing of an act in terms so vague that men of ordinary intelligence must necessarily guess as to its meaning and differ as to its application . . . ." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926).

### A.

■ Section 18–5–302(2) prohibits a person from knowingly making "a false representation as to the existence of an ownership interest in land which he has as a seller . . . and which is relied upon." Although the defendant makes only oblique reference to the term "an ownership interest in land," we nevertheless consider it as part of his due process argument. Property interests range from the absolute and unqualified fee simple through various gradations of lesser interests, and in our view present the type of "varied circumstances" that only a generic term such as "ownership" can adequately encompass. Section 18–5–302(2) in this respect is similar to other statutes containing general terms which have withstood constitutional challenges. *See, e.g., People v. Smith, supra* (the phrase "any means . . . of sufficient consequence reasonably calculated to cause submission" in second degree sexual assault statute not unconstitutionally vague); *People v. McKnight,* 200 Colo. 486, 617 P.2d 1178 (1980) (the term "emergency" in statutory offense of driving after judgment prohibited sufficiently understood to satisfy due

process); *People v. Garcia,* 197 Colo. 550, 595 P.2d 228 (1979) (common sense meaning of the word "possession," although not defined in firearm statute, adequate to dispel claim of unconstitutional vagueness); *People v. Hines,* 194 Colo. 284, 572 P.2d 467 (1977) (the term "anything of value," as used in first degree kidnapping statute, not unconstitutionally vague); *People v. Holloway,* 193 Colo. 450, 568 P.2d 29 (1977) (the word "belief" in statute proscribing theft by receiving not unconstitutionally vague); *People in the Interest of K.P.,* 182 Colo. 409, 514 P.2d 1131 (1973) (the term "behavior inimicable to the welfare, safety or morals of other pupils" not so uncertain in meaning as to invalidate statute setting forth grounds for expulsion from school). The term "ownership interest in land," at least in the context of a false representation made to another, is not so vague or uncertain that persons of ordinary intelligence must guess as to its meaning or necessarily differ as to its application.[4]

### B.

■ The defendant's principal challenge to section 18–5–302(2) centers on the absence of statutory language limiting the statutory proscription to representations which would deceive a reasonable person. He first asserts that without such a limitation the statute necessarily conditions criminal liability on the subjective understanding and reliance of the victim, matters over which an accused has no control. He next

---

4. Although the phrase "an ownership interest in land" may encompass many types of property interests, *see, e.g., Pinkerton v. Pritchard,* 71 Ariz. 117, 223 P.2d 933 (1950); *Pacific Coast Joint Stock Land Bank of San Francisco v. Roberts,* 16 Cal.2d 800, 108 P.2d 439 (1940); *Sapp v. Sapp,* 33 Del.Ch. 524, 96 A.2d 741 (1953); *Gibson v. Zylks,* 186 La. 1043, 173 So. 757 (1937); *Peterson v. Johnson,* 132 Wis. 280, 111 N.W. 659 (1907), we need not decide in this case the precise contours of the phrase within the meaning of section 18–5–302(2). The defendant's representation was that he "owned" the land, a representation which clearly falls within the statutory spectrum. Whether a more remote interest, such as, for example, an equitable contingent future estate, would fall within the ambit of the statute is not at issue

here. *See generally People v. District Court,* 200 Colo. 65, 619 P.2d 494 (1980) (chattel mortgage is a "proprietary interest" within the meaning of a statutory definition of "property of another" for purposes of statute proscribing first degree arson). Nor does the mere fact that a statute's broadest reach is as yet undetermined render that statute constitutionally infirm. As we noted in *People ex rel. City of Arvada v. Nissen,* 650 P.2d 547, 552 (Colo. 1982): "Admittedly, there might be some difficulty in applying the ordinance to certain situations. Such difficulty, however, is frequently present in cases involving the application of a legislative standard to close questions of fact and, by itself, does not amount to a constitutional infirmity." *Accord People v. Garcia,* 189 Colo. 347, 541 P.2d 687 (1975).

claims that the statutory proscription, unless limited by a reasonable person standard of reliance, becomes so open-ended in its scope as to permit a conviction for the making of a true statement as to an ownership interest in land merely because the statement creates a false belief or understanding on the part of the victim. We reject his arguments.

### 1.

A reasonable person standard of reliance refers to the meaning that a reasonable person would attribute to the seller's representation and the actions that a reasonable person would take in reliance thereon. In our view the statutory proscription was not intended to be limited by such a standard of reliance. Criminal sanctions for fraudulent activity traditionally have not incorporated the reasonable person standard advocated by the defendant. For example, the former crime of obtaining property by false pretenses required only that the pretense deceive the person "designed to be deceived," even though it would not have deceived "a person of ordinary prudence." *Clarke v. People,* 64 Colo. 164, 171, 171 P. 69, 72 (1918). *See also Miller v. People,* 22 Colo. 530, 45 P. 408 (1896). The absence of any provision in section 18–5–302(2) conditioning criminal responsibility on a reasonable person's reaction to the fraudulent misrepresentation reflects a deliberate legislative choice. The design of the law is clear. By requiring only actual reliance upon the fraudulent representation the statutory proscription thereby protects "the weak and credulous from the wiles and stratagems of the artful and cunning, as well as those whose vigilance and sagacity enable them to protect themselves." *Lefler v. State,* 153 Ind. 82, 86, 54 N.E. 439, 440 (1899), quoting *McKee v. State,* 111 Ind. 378, 381, 12 N.E. 510, 511 (1887); *see also, e.g., State v. Foot,* 100 Mont. 33, 48 P.2d 1113 (1935); W. La-Fave and A. Scott, *Handbook on Criminal Law* § 90 at 669 (1972).

We find no merit in the defendant's argument that due process of law requires us to engraft on section 18–5–302(2) the reasona-ble person standard of reliance. Assuming *arguendo* that a seller of real property who brings himself within the sweep of the statutory proscription might not be able to predict whether the intended victim will actually rely on a false statement, he nevertheless is placed on clear and unequivocal notice of the nature of the proscribed conduct—that is, knowingly making a false representation as to the seller's ownership interest in land. A person cannot "knowingly" make a false representation unless he is aware of the falsity of his representation at the time the representation is made. *See* section 18–1–501(6), C.R.S.1973 (1978 Rep.Vol. 8). The inclusion of the culpability element of "knowingly" in the statutory proscription thus serves as an added safeguard against its application to inadvertent or innocent conduct.

Moreover, in the event an accused mistakenly misrepresents the nature of his ownership interest to another, he can raise that mistake as a defense to the charge of false representation. The Colorado Criminal Code recognizes a mistaken belief of fact as an affirmative defense when it "negatives the existence of a particular mental state essential to the commission of the offense." Section 18–1–504(1)(a), C.R.S.1973 (1978 Repl.Vol. 8). When the issue of mistake is raised, the guilt of the defendant must be established beyond a reasonable doubt as to that issue as well as all the elements of the offense. Section 18–1–407(2), C.R.S.1973 (1978 Repl.Vol. 8). Viewed within the framework of the pertinent statutory scheme, we conclude that a reasonable person standard of reliance is not indispensable to the constitutional viability of the statutory proscription set out in section 18–5–302(2). *See, e.g., State ex rel. Sanborn v. Koscot Interplanetary, Inc.,* 212 Kan. 668, 512 P.2d 416 (1973) (statutory proscription against misrepresentation in buyer protection act constitutional notwithstanding absence of any requirement of reliance); *Von Weidlein International, Inc. v. Young,* 16 Or.App. 81, 517 P.2d 295 (1973) (statute authorizing cancellation of liquor license for false representation to liquor control commission upheld against vague-

ness attack even though no statutory requirement of reliance). Actual reliance suffices for the imposition of criminal liability.

2.

█ We also find no merit in the defendant's claim that the statute, without a reasonable person standard of reliance, is so broad in scope as to permit a conviction for the making of a true statement as to an ownership interest in land as ·long as it creates a false belief or understanding in the victim with respect to the nature of the seller's interest in the land. The language of section 18–5–302(2) does not permit a construction that would authorize a conviction for making a statement which is factually true as to the maker's ownership interest in land. As previously noted, the starting point of criminal liability under the statute is the making of a *false* representation with knowledge of the falsity. The defendant's argument on the purported scope of the statutory prohibition has no foundation in the statute itself.

C.

In summary, we conclude that section 18–5–302(2) requires actual reliance by the victim, without regard to how a reasonable

person might have understood and reacted to the misrepresentation, and that this requirement of actual reliance satisfies due process standards. We also conclude that the statute, as so construed, does not permit a conviction for the making of a true representation as to an ownership interest in land notwithstanding the fact that the true representation may create a false or mistaken belief in the victim with respect to the nature of the seller's interest in the land.

III.

█ The defendant also argues that the evidence was insufficient to support his conviction.[5] In support of his contention he asserts that his statements were not false when considered in the light of the doctrine of equitable conversion. Equitable conversion, however, is a civil property law doctrine often invoked to ascertain the rights and duties of contracting parties and those claiming under them in relation to real estate as the result of a specifically enforceable contract between them. *See Konecny v. von Gunten,* 151 Colo. 376, 379 P.2d 158 (1963); *Chain O'Mines v. Williamson,* 101 Colo. 231, 72 P.2d 265 (1937).[6] We know of

---

5. While the defendant phrases this argument in terms of the statute being "unconstitutional as applied," his argument is that his statements were actually true. We therefore regard his contention as a challenge to the sufficiency of the evidence on the element of a false statement. Mixed in with this argument is an invocation of the constitutional doctrine of overbreadth. The defendant argues that if section 18–5–302(2) can be deemed to apply to the circumstances in this case, it would also apply to conduct traditionally thought to be quite innocent, such as a representation that one "owns" one's home despite the fact that a mortgage exists. The overbreadth doctrine, however, only applies to legislative enactments which threaten the exercise of First Amendment interests or other fundamental constitutional rights. *E.g., People ex rel. City of Arvada v. Nissen, supra; People v. Mason,* 642 P.2d 8 (Colo.1982); *People v. Andrews,* 632 P.2d 1012 (Colo.1981); *People v. Garcia,* 197 Colo. 550, 595 P.2d 228 (1979). Alexander does not point to any such constitutionally protected conduct, and we need not examine his overbreadth contention any further.

6. The doctrine of equitable conversion is described in III *American Law of Property* § 11.- 22 at 62–63 (A. Casner ed. 1974), as follows:

"The rights, powers, duties and liabilities arising out of a contract for the sale of land as between the parties, and as between each party and third persons in relation to the land, are frequently regarded as derivable from the theory of an equitable conversion, in consequence of which the purchaser is regarded in equity as owner of the land and debtor for the purchase money and the vendor as a secured creditor having a legal position not unlike that of a mortgagee. This doctrine of equitable conversion is applicable only when there is a specifically enforceable contract between the parties, and the changes in the rights, duties, powers and liabilities of the parties which result from the making of the contract are consequences of the equitable right to specific performance. As between the parties to the contract, the doctrine is invoked in allocating the benefits and burdens incident to property in the land; as between the parties and third persons, it is invoked to determine the devolution upon death of the rights and liabilities of each party with respect to the land, and to as-

no justification to extend the doctrine to this case, which involves a criminal charge of fraudulently selling land to a third party, Forsyth, and not a civil claim by Forsyth against the defendant deriving from the latter's contract with Busteed. The real issue thus becomes whether the evidence, when viewed in a light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. *E.g., People v. Brassfield,* 652 P.2d 588 (Colo.1982); *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973); *People v. Byrnes,* 117 Colo. 528, 190 P.2d 584 (1948).

▮ When the evidence is appropriately viewed, we believe the jury could reasonably have concluded that the defendant acted in such a manner as to satisfy all the elements of the crime. First, there was evidence that the defendant falsely represented to Forsyth that he owned the Wellington property. The defendant's interest in the Wellington property stemmed solely from his purchase contract with Busteed. The Busteed contract, however, provided that title and possession of the Wellington property would not pass until the closing which, as the prosecution's evidence demonstrated, never occurred. Thus, when the defendant represented to Forsyth that he "owned" the Wellington property and contracted to sell Forsyth forty acres of the property, he had neither title nor even a right of possession to the property by virtue of his contract with Busteed. *See American Mortgage Company v. Logan,* 90 Colo. 157, 7 P.2d 953 (1932); *Schiffner v. Chicago Title & Trust Company,* 79 Colo. 249, 244 P.

1012 (1926). Second, there was evidence establishing that the defendant knew his ownership representation to Forsyth was false. When the defendant contracted to sell forty acres of the Wellington property to Forsyth, he was aware that he had not yet acquired a right of possession, much less title, to the property in question and that he would not do so until such time as he closed his contract with Busteed. Finally, there was ample evidence of Forsyth's actual reliance upon the false representation. Forsyth paid the defendant $1,000 on March 8, 1979, and an additional $6,050 over the next several months.[7] Since the prosecution's evidence was sufficient to permit the jury to reasonably conclude that the defendant acted in such a manner as to satisfy all the essential elements of the crime—a false representation as to an ownership interest in property, knowingly made to another, and actual reliance by the other person on the representation—the trial court did not err in denying the defendant's motion for a judgment of acquittal.

### IV.

▮ We turn finally to the defendant's arguments relating to the jury instructions tendered by him and refused by the trial court. He first argues that the trial court erred in refusing to tailor the instruction defining the elements of the crime so as to incorporate a requirement of "reasonable" reliance and in further refusing to instruct the jury on the victim's duty to investigate the factual basis of the representation.[8] As discussed in Part IIB, *supra,* the crime in question requires actual reliance, not reasonable reliance. Given this requirement of

certain the powers of creditors of each party to reach the land in payment of their claims."

7. Forsyth's actual reliance upon the defendant's statement is adequately demonstrated by his making various payments to the defendant pursuant to the contract. We need not, therefore, decide in this case the full scope of "actual" reliance.

8. The defendant's tendered instruction on the victim's duty to investigate read as follows:
"A person's reliance may be justified even though he failed to make an independent investigation which a reasonable person

might have made under the same or similar circumstances.
"However, a person's reliance is not justified if he failed to make a reasonable, independent investigation when
1. He knew facts which, under the circumstances, would have prompted a person of the same or similar intelligence, education or experience to make such an investigation; and
2. The circumstances were such that he had a reasonable opportunity to make such an investigation and by making such an investigation he would have discovered the actual facts."

actual reliance, there is no legal support for instructing the jury as proposed by the defendant.

 The defendant also argues that the trial court erred in refusing to give his tendered instructions detailing various concepts of property law including equitable conversion, the right of a person out of possession to convey, the right to immediate possession upon conveyance, and the doctrine of after acquired title.[9] A defendant admittedly is entitled to an instruction on a principle of law if there is some evidence to support it. *E.g., People v. McKnight,* 626 P.2d 678 (Colo.1981); *People v. Parsons,* 199 Colo. 421, 610 P.2d 93 (1980). The trial court, however, should not instruct on abstract principles of law unrelated to the issues in controversy, *e.g., Gill v. People,* 139 Colo. 401, 339 P.2d 1000 (1959), nor on statements of law which are incorrect or misleading, *e.g., People v. Gomez,* 632 P.2d 586 (Colo.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982), nor, finally, on doctrines or principles which are based upon fanciful interpretations of the facts unsupported by the record, *People v. Truesdale,* 190 Colo. 286, 546 P.2d 494 (1976). We are satisfied that the trial court properly refused the defendant's tendered instructions. Each instruction constituted · an abstract statement of a principle which, quite simply, was not relevant to any issue in the case.

The judgment is affirmed.

9. The defendant's four tendered instructions on equitable conversion, the right to convey when out of possession, the right to immediate possession upon conveyance, and the doctrine of after acquired title read respectively as follows:

"The court instructs you that as a matter of law a contract for sale of land to be paid for in the future vests equitable title in the purchaser from the date of execution. The law regards an equitable estate as the real ownership. This doctrine of law is known as 'equitable conversion.'"

"Any person claiming right or title to lands, tenements, or hereditaments, although he may be out of possession, and notwithstanding there may be an adverse possession thereof, may sell, convey and transfer his interest in and to the same in as full and complete a manner as if he were in the actual possession of the lands and premises intended to be conveyed."

"All conveyances of real estate and of any interest therien [sic], duly executed and delivered shall be· held to carry with them the right to immediate possession of the premises or interest conveyed, unless a future day for the possession is therein specified."

"If any person sells or conveys to another by deed or conveyance, purporting to convey an estate in fee simple absolute, any tract of land or real estate, not being possessed of the legal estate or interest therein at the time of the sale and conveyance, and, after such sale and conveyance the person becomes possessed of and confirmed in the legal estate of land or real estate so sold and conveyed, said conveyance shall be valid as if the grantor or vendor had the legal estate or interest at the time of said sale or conveyance."