ULLMAN v. OKLAHOMA HIGHWAY PATROL
2023 OK 100
Case Number: 121422
Decided: 10/17/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 100, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

NIKOHL ULLMAN and BREANNA PARSONS, Plaintiffs/Appellants,
v.
THE OKLAHOMA HIGHWAY PATROL, Defendant/Appellee.
APPEAL FROM THE DISTRICT COURT OF LOVE COUNTY
Honorable Todd Hicks, Trial Judge
¶0 The plaintiffs were allegedly injured from a collision with an Oklahoma Highway Patrol (OHP) Trooper. Less than three weeks after the accident, the plaintiffs' lawyer sent the OHP a letter asking it to preserve any evidence relating to the incident, and to request some additional information. OHP forwarded the letter to the Oklahoma Office of Management & Enterprise Services (OMES) and OMES unilaterally determined that the request letter was the statutory notice of a governmental tort claim, triggering the time limits within the Oklahoma Governmental Tort Claims Act, et. seq. (the Act). The plaintiffs' lawyer disagreed. Less than one year after the accident, the lawyer sent a notice of governmental tort claim to OMES. Five months later, the plaintiffs filed a lawsuit against the OHP, seeking recovery for their injuries. OHP filed a motion to dismiss, arguing that the letter requesting the preservation of evidence was notice of a governmental tort claim triggering time limits which had already expired by the time the plaintiffs filed their lawsuit. The trial court agreed, and dismissed the cause. We retained it to determine whether the plaintiffs' letter requesting the preservation of evidence constituted the required statutory notice of a governmental tort claim. We hold that it did not. 
APPEAL PREVIOUSLY RETAINED;
TRIAL COURT REVERSED AND CAUSE REMANDED.
Aharon Hernandez Manley, Richard Parr, Oklahoma City, Oklahoma, for Plaintiffs/Appellants, Nikohl Ullman and Breanna Parsons.
Devan Pederson, Katie A. Wilmes, Assistant Attorney General, State of Oklahoma, Oklahoma City, Oklahoma, for Defendant/Appellee, Oklahoma Highway Patrol.
KAUGER, J.:
¶1 The dispostive issue presented is whether a letter sent to the OHP to request that it preserve evidence regarding an accident constituted the required statutory notice of a governmental tort claim. We hold that it did not.
FACTS
¶2 On May 30, 2021, the plaintiffs/appellants, Nikohl Ullman and Breanna Parsons (collectively plaintiffs), were traveling on a jet ski on Lake Murray, in Love County, Oklahoma. Allegedly, Trooper Brinson of the defendant/appellee, Oklahoma Highway Patrol (OHP), drove a boat which collided with the plaintiffs, injuring them.
¶3 Eighteen days later, William Kennedy, the plaintiffs' lawyer (Kennedy/lawyer), mailed a letter addressed to the OHP Legal Department dated June 17, 2021. The letter is stamped "RECEIVED JUN 22, 2021 LEGAL." The letter notes "WARNING CONCERNING SPOLIATION OF EVIDENCE & NOTICE OF CLAIMS." It identified the accident of May 30, 2021, between the plaintiffs and an unnamed trooper who apparently did not give any information to the plaintiffs. It states that, due to the nature of their injuries, "[t]his is likely going to lead to litigation." The injuries between the two plaintiffs are described as epilepsy, migraines, broken pelvis and hip, two fractured femurs, and other not fully diagnosed injuries. The letter requests information about insurance coverage, and admonishes OHP to preserve and maintain all potentially relevant records and documents, including videos, security footage, body cam, names of the troopers working on the lake, pictures, incident reports, and email correspondence relating to the accident.
¶4 Apparently OHP forwarded the letter to Tara Hubbard (Hubbard/OMES), Liability Advisor for the Risk Management Department, Division of Capital Assets Management of OMES, because she responded to Kennedy by email with letters for each plaintiff, dated June 24, 2021, acknowledging the June 22, 2021, receipt. The response informed Kennedy that OMES had determined his letter served as written notice of a tort claim under the Oklahoma Governmental Tort Claims Act (the Act), et. seq. The Act requires that the notice of a claim be submitted within one year of an incident. 
¶5 Hubbard's OMES response referred to the lawyer's preservation of evidence letter as "the claim of compensation you have tendered, asking for damages under" the Act. It notified Kennedy that the State had 90 days to review and evaluate the claim, and it requested some additional information such as HIPAA forms, medical records and bills, etc, which, according to Kennedy, had not yet been determined. It also stated that:
The supplemental information must be received on or before July 08, 2021, the date on which the 90 days will begin. If neither timely submission nor satisfactory explanation is made by this date, the claim will stand denied at the end of the expiration of 90 days from the date the information is due. The right to seek compensation in court may be restricted by the limitations period prescribed by law of one hundred eighty (180) days after the denial of the claim.
¶6 On August 12, 2021, Hubbard emailed Kennedy two additional letters stating that both claims were denied. The OHP acknowledges that Kennedy then filed "another" notice of governmental tort claim in May of 2022. The record contains two OMES "Bodily Injury Claim" forms which are signed by Kennedy, but are not dated. Presumably, they are copies of OMES forms he alleges that he submitted. They include each claimant's information, information on the incident, who and which state agency was involved, information about the claimant's lawyer, medical provider information, dollar amounts of medical bills, insurance information, and amount requested for each claim. This amount was $175,000.00 by each plaintiff.
¶7 The record also includes a copy of a letter from Kennedy to Hubbard dated June 2, 2022, which was emailed and mailed. It stated:
I am in receipt of your letter dated June 1, 2022, stating that the claim was previously denied. Your correspondence from June 1, 2022, was sent by certified mail. How was the letter dated August 12, 2021 delivered? Do you have the certified mail receipt number? That "denial" was premature in that the information contained in our preservation of evidence letter sent on June 17, 2021, was insufficient in terms of a notice letter and was sent to ensure the preservation of evidence. The code requires a "valid notice" letter. The previous letter barely contained a basic description of the facts related to the preservation of evidence notice. Our contentions regarding your employee's negligent actions and why we believe him to be your employee were lacking. More importantly, there were no medical records, no calculation of damages, economic or otherwise, or really, any information whatsoever that would allow a complete examination of the claim which is the intent of requiring a valid notice letter. Our previous communication was intended to preserve evidence and was not a valid claim as the statute required.
The June 1, 2022, letter referenced above as a letter from Hubbard is not included in the record.
¶8 On October 3, 2022, the plaintiffs filed a lawsuit against the OHP in the District Court of Love County, Oklahoma. They asserted claims of negligence, and respondeat superior. The plaintiffs alleged that they notified the OHP of their claims within the prescribed time limits of the Act. They also alleged that their claims were denied on or about June 1, 2022, thereby qualifying the filing of their lawsuit as timely because it was commenced within 180 days after denial of the claims.
¶9 On November 4, 2022, the OHP filed a Motion to Dismiss, attaching records from OMES. The OHP attempted to establish that the plaintiffs failed to file suit within 180 days of August 12, 2021, the alleged denial of the claims by OMES. The OHP attachments included an affidavit of Hubbard, stating that: 1) OMES received tort claims filed by the plaintiffs on June 22, 2021; 2) OMES denied both claims on August 12, 2021; and 3) pursuant to the August 12, 2021, denial, the filing period to file a lawsuit expired on February 9, 2022.
¶10 On November 21, 2022, Kennedy responded to the Motion to Dismiss, stating that the purpose of the June 17, 2021, letter received June 22, 2021, sent only to the OHP, as stated, was to preserve any evidence related to the case. It was not intended to serve as the statutorily required notice of a governmental tort claim to OMES, nor did it in any way attempt to sufficiently fulfill statutory notice requirements.
¶11 Kennedy's letter also noted that the accident occurred on May 30, 2021, and there was no possible way, in less than three weeks, the extent of the plaintiffs' injuries could be determined, much less presented as a written claim for loss. Rather, the plaintiffs presented their actual notice of claim on May 27, 2022, when they explained the trooper's alleged negligence, itemized their medical expenses, made a statement as to a wage claim, provided a HIPAA release, and stated a full settlement amount which would be accepted. This notice was filed less than one year after the incident as allowed by the Act.
¶12 The trial court held a hearing on the Motion to Dismiss on January 19, 2023. On January 18, 2023, the OHP filed a brief arguing that the lawsuit was untimely because the plaintiffs' lawyer ignored their unilateral determination that his June 22, 2021, letter constituted the statutorily required notice. It also argued that Kennedy's May 2022, claim merely served as a "second" notice of the claim.
¶13 On February 10, 2023, the trial court filed an order memorializing its ruling in the January 19, 2023, hearing. It granted the OHP's Motion to Dismiss. On February 17, 2023, the plaintiffs filed a Motion for a New Trial, again arguing that they never filed a notice of claim with OMES in 2021. Instead, OMES used the preservation of evidence letter sent to the OHP against the plaintiffs to get their lawsuit dismissed.
¶14 After a hearing on the new trial motion on May 26, 2023, the trial court, on June 1, 2023, filed an order outlining its ruling. It determined that:
1) the June 17, 2021, correspondence was a claim contemplated by the Act;
2) the plaintiff had 180 days after denial [August 12, 2021] or until February 8, 2022;
3) an amendment cannot cure the defect;
4) the plaintiff's petition should be dismissed with prejudice.
Consequently, the court sustained the OHP's motion to dismiss, denied the plaintiffs' motion for new trial, and dismissed the cause. The plaintiffs appealed on July 3, 2023. The Court retained the appeal on July 18, 2023, and assigned it for an opinion on August 18, 2023.

THE LETTER SENT TO THE OHP TO REQUEST THAT IT
PRESERVE EVIDENCE REGARDING AN ACCIDENT DID NOT CONSTITUTE THE REQUIRED STATUTORY NOTICE OF A GOVERNMENTAL TORT CLAIM.
A.
Standard of Review
¶15 Generally, an abuse of discretion standard is used for appellate review of an order denying a motion for new trial. An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. An alleged error of law is reviewed on appeal using a de novo standard. The alleged error in this proceeding is the trial court's construction or meaning of a governmental tort claim notice. This alleged error is reviewed de novo.
B. 
Preservation of Evidence Request.
¶16 Because the disputed issue concerns a preservation of evidence request, the nature and purpose of such requests are instrumental in resolving this cause. A litigant who is on notice that documents and information in its possession are relevant to litigation or potential litigation or are reasonably calculated to lead to the discovery of admissible evidence has a duty to preserve such evidence. Failure to preserve evidence, or the destruction or alteration of evidence can adversely affect the ability of a litigant to prove his or her claim. So much so, that a few jurisdictions have recognized that a tort action can be brought for such destruction.
¶17 The repercussions of the failure to preserve evidence can be severe, not only in the criminal context, but regarding civil actions as well. When an accident occurs, an attorney neglecting to attempt to preserve evidence relevant to his or her client's claim could be subject to a malpractice lawsuit. Or if a party intentionally destroys such evidence, sanctions could be imposed against them. Sending a letter in an effort to preserve evidence related to a governmental tort claim is not required by the Act. Nevertheless, it is in a plaintiff's best interest that it be done as soon as possible after an incident.
¶18 Preserved evidence might be necessary to not only prove a claim, but to determine whether a plaintiff might even have an action to bring at all. A request to preserve evidence is not in its own right notice that a lawsuit is certain to be filed. In this cause the letter does use a heading which included a warning against spoiling evidence and notice of claims, but the body of the letter clearly identifies it as an attempt by Kennedy to preserve evidence so that he could make determinations about whether tort claims existed and what the extent of damages might be if they did exist.
C.
Notice and The Act.
¶19 This cause is unusual because the plaintiffs argue that the letter was not intended to serve as notice of the claim, nor could it, because it did not meet the statutory requirements for notice. The OHP argues that the letter, even if it wasn't intended to serve as notice, was sufficient and Kennedy had the opportunity to object to it.
¶20 Notice of a claim is critical under the Act because the Act provides for the exclusive liability of a governmental entity for a tort claim. The notice requirement is a mandatory prerequisite jurisdictional requirement to filing a claim for tort damages. A lawsuit must be based on the claimant presenting written notice of a claim within one year of the date the loss occurs, or the claim is forever barred.
¶21 A "claim" means any written demand presented by a claimant, or the claimant's representative, in accordance with the Act to recover money for the governmental entity's act or omission. Notice of the claim is designed to protect governmental interests by promoting prompt investigation, repair of dangerous conditions, speedy settlement of meritorious claims, and to give the governmental entity time to meet fiscal liabilities. Substantial compliance with the notice provisions of the Act is sufficient when the governmental entity is not prejudiced, and the information provided satisfies the purposes of the statutory notice provisions. Undoubtedly, a letter requesting the preservation of evidence also furthers a prompt investigation, but to qualify as notice of a claim, it should satisfy all of the purposes of the notice provisions and contain more information in accordance with the Act.
¶22 What must be included in a claim also depends on what the claimant is seeking. Title governs notice of claims. To constitute a notice of claim, the claim shall be in writing, and filed with OMES (or if it is a against a political subdivision of the state, with the office of the clerk of the governing body). Here, it was written, but filed with the OHP only as a letter to preserve evidence. It was the OHP that then unilaterally filed it with OMES. It may be filed by certified mail with return receipt, but the statute is otherwise silent as to other forms of filing. The lawyer's preservation-of-evidence letter was mailed. OMES responded mostly through e-mails.
¶23 Although the failure to provide some details of the claim does not necessarily invalidate the entire claim, we have held that notice of claims must be substantially complied with to constitute the required statutory notice. Claims must generally include details such as the date, time, place and circumstances of the incident; the identity of the agency involved; the amount of compensation or other relief demanded; the name, address, and telephone number of the claimant or authorized agent; the name, address and telephone number of any agent authorized to settle.
¶24 If the claim is for personal injuries, it must include the name and address of all health care providers who treated the claimant and a HIPAA compliant release form. If the claim is for loss of earnings, documentation of the loss of earnings must be provided. If for loss of personal property, the amount of the property loss should be included as well as the method and documentation to calculate the loss.
¶25 While the letter to preserve evidence included some of the required information, we cannot say it substantially complied with the statutory notice requirements. It was clearly not intended to serve as a notice to trigger the time constraints of the Act. It was not addressed or sent to OMES. It stated that a claim might be made, but that evidence must be preserved to make such an evaluation. Most of the information it was seeking was information necessary to determine if a legitimate claim even existed.
¶26 Furthermore, it did not state the name of the OHP officer who allegedly caused the accident. It provided no details about healthcare providers or the injuries sustained, other than to generally list some of them. It was sent so soon after the accident, the extent of the plaintiffs' injuries could not have been fully known. If the plaintiffs had been relying on the submission of the letter to be in substantial compliance with the Act, they would have been substantially unsuccessful. If the plaintiffs' lawyer had relied on the letter as notice of a tort claim, filed the lawsuit within 180 days after the August 2021 OMES "denial," the lawsuit could have been dismissed for ineffective notice of claim.
CONCLUSION
¶27 A letter which notifies a potential litigant to preserve evidence serves a purpose of preventing the destruction or alteration of evidence in order for a plaintiff to determine if an actionable claim exists. While such a letter may further a governmental entity's interest in promoting a prompt investigation, it must also contain language and information in accordance with the Act to constitute notice under the Act. The letter in this cause did not include enough language and information to substantially comply with the Act and constitute notice. The trial court is reversed and the cause remanded for further proceedings.
APPEAL PREVIOUSLY RETAINED;
TRIAL COURT REVERSED AND CAUSE REMANDED.
KANE, C.J., ROWE, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, GURICH, KUEHN, JJ., concur.
DARBY, J., not partiticipating.
FOOTNOTES
 A copy of the June 17, 2021, letter is attached.
 Title (E-H) sets forth the specific requirements for a writing to constitute notice. It provides:
E. The written notice of claim to the state or a political subdivision shall state the date, time, place and circumstances of the claim, the identity of the state agency or agencies involved, the amount of compensation or other relief demanded, the name, address and telephone number of the claimant, the name, address and telephone number of any agent authorized to settle the claim, and any and all other information required to meet the reporting requirements of the Medicare Secondary Payer Mandatory Reporting Provisions in Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 (MMSEA) through the Centers for Medicare & Medicaid Services (CMS). Failure to state either the date, time, place and circumstances and amount of compensation demanded, or any information requested to comply with the reporting claims to CMS under MMSEA shall not invalidate the notice unless the claimant declines or refuses to furnish such information after demand by the state or political subdivision. The time for giving written notice of claim pursuant to the provisions of this section does not include the time during which the person injured is unable due to incapacitation from the injury to give such notice, not exceeding ninety (90) days of incapacity.
F. If the written notice of claim demands relief for personal injuries, the claimant shall provide the name and address of all health care providers who treated the claimant since the date and time of the circumstances claimant set forth in the notice of claim required by subsection E of this section and the date of the notice required by subsection E of this section. For each health care provider required to be identified, the claimant shall provide a HIPPA [sic] compliant authorization for release of health information. Failure to provide the name and address of all health care providers and the HIPPA [sic] compliant authorization required by this subsection shall not invalidate the notice required by subsection E of this section unless the claimant declines or refuses to furnish such information after demanded by the state or political subdivision.
G. If the written notice of claim demands relief for loss of earnings, the claimant shall provide the documentation of the loss of earnings since the date and time of the circumstances claimant set forth in the notice of claim required by subsection E of this section and the date of the notice required by subsection E of this section. Failure to provide the documentation required by this subsection shall not invalidate the notice required by subsection E of this section unless claimant declines or refuses to furnish such information after demanded by the state or political subdivision.

H. If the written notice of claim demands relief for losses of real or personal property, the claimant shall provide the amount of the property loss claimed, the method used to calculate the amount of loss, documentation relied upon in determining the amount of loss, and proof of the claimant's ownership of property. Failure to provide the documentation required by this subsection shall not invalidate the notice required by subsection E of this section unless claimant declines or refuses to furnish such information after demanded by the state or political subdivision.
 Title (A-D) only requires notice to be given within one year of the date of loss. It provides in pertinent part:
A. Any person having a claim against the state or a political subdivision within the scope of Section 151 et seq. of this title shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages.
B. Except as provided in subsection H of this section, and not withstanding any other provision of law, claims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.
C. A claim against the state shall be in writing and filed with the Office of the Risk Management Administrator of the Office of Management and Enterprise Services who shall immediately notify the Attorney General and the agency concerned and conduct a diligent investigation of the validity of the claim within the time specified for approval or denial of claims by Section 157 of this title. A claim may be filed by certified mail with return receipt requested. A claim which is mailed shall be considered filed upon receipt by the Office of the Risk Management Administrator.

D. A claim against a political subdivision shall be in writing and filed with the office of the clerk of the governing body.
 A copy of the letters are attached to the opinion. Hubbard emailed two nearly identical letters to the plaintiffs' lawyer on June 24, 2021. One letter regards the claim of one of the plaintiffs, and the other letter concerns the claim of the other plaintiff. Title (A-B) provides:
A. A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part. A claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period. If the state or a political subdivision approves or denies the claim in ninety (90) days or less, the state or political subdivision shall give notice within five (5) days of such action to the claimant at the address listed in the claim. If the state or political subdivision fails to give the notice required by this subsection, the period for commencement of an action in subsection B of this section shall not begin until the expiration of the ninety-day period for approval. The claimant and the state or political subdivision may continue attempts to settle a claim, however, settlement negotiations do not extend the date of denial unless agreed to in writing by the claimant and the state or political subdivision.

B. No action for any cause arising under this act, Section 151 et seq. of this title, shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section. The claimant and the state or political subdivision may agree in writing to extend the time to commence an action for the purpose of continuing to attempt settlement of the claim except no such extension shall be for longer than two (2) years from the date of the loss.
 A copy of the August 12, 2021, letters are attached.
 They also alleged that they notified the Oklahoma State Bureau of Investigation (OSBI) of their tort claims as well.
 Title , see note 1, supra.
 Title (E-H), see note 2, supra.
 Title (A-D), see note 3, supra.
 Garnett v. Government Employees Ins. Co., , ¶29, ; Grisham v. City of Oklahoma City, , ¶4, ; Matter of K.S., , ¶7, .
 Fent v. Oklahoma Natural Gas Co., , ¶ 12, ; Grisham v. City of Oklahoma City, see note 10, supra; Gowens v. Barstow, , ¶11, 363 P.3d 644.
 Grisham v. City of Oklahoma City, see note 10, supra; Christian v. Gray, , ¶43, .
 Grisham v. City of Oklahoma City, see note 10, supra.
 Barnett v. Simmons, , ¶21, .
 Barnett v. Simmons, see note 14, supra; Patel v. OMH Medical Center, Inc., , ¶46, .
 Patel v. OMH Medical Center, Inc., see note 15, supra.
 See, e.g., State ex rel. Oklahoma Bar Association v. Glapion, , ¶9, _ P.3d __, Client sued and recovered from an attorney who, among other things, neglected to attempt to preserve evidence related to an automobile accident.
 See, Barnett v. Simmons, see note 14, supra.
 See, the June 17, 2021, letter attached.
 Title (B) provides:
B. The liability of the state or political subdivision under The Governmental Tort Claims Act shall be exclusive and shall constitute the extent of tort liability of the state, a political subdivision or employee arising from common law, statute, the Oklahoma Constitution, or otherwise. If a court of competent jurisdiction finds tort liability on the part of the state or a political subdivision of the state based on a provision of the Oklahoma Constitution or state law other than The Governmental Tort Claims Act, the limits of liability provided for in The Governmental Tort Claims Act shall apply.
 Hall v. Geo Group, Inc., , ¶1, ; Harmon v. Cradduck, , ¶28, .
 Watkins v. Central State Griffin Memorial Hospital, , ¶22, ; Pellegrino v. State ex rel. Cameron Univ., ,¶6, 63 P.3d 533; Hathaway v. State ex rel. Medical Research & Technical Authority, , ¶8, 49 P.3d 1082. Title (B), see note 3, supra.
 Title (4) provides:
4. "Claim" means any written demand presented by a claimant or the claimant's authorized representative in accordance with this act to recover money from the state or political subdivision as compensation for an act or omission of a political subdivision or the state or an employee;
Section 152 has been amended seven times since 2018, but subsection 4 has remained unchanged.
 Pellegrino v. State ex rel. Cameron Univ., see note 22, supra at ¶17; Duncan v. City of Nichols Hills, , ¶14, .
 See, Minie v. Hudson, , ¶6, .
 Title (C), see note 3, supra.
 Examples of previous substantial compliance cases are fact specific, but include: I.T.K. v. Mounds Public Schools, , ¶51, 451 P.2d 125 [Notice of claim sent to school superintendent satisfied notice filing requirement with office of board of education, but unilateral insurance adjuster letter seeking settlement was insufficient to trigger tolling provisions.]; Grisham v. City of Oklahoma City, see note 10, supra at ¶23 [Notice of property damage without stating any other loss was not sufficient notice for any other loss, but notice using claim form was sufficient to serve as notice for personal injuries for the same transaction or occurrence as property damage claim.]; Minie v. Hudson, see note 25, supra at ¶8 [Verbal notice of claim given to city was insufficient.]. Minie includes a list additional substantial compliance cases, most of which have been superceded in part by statutory changes, but nevertheless substantial compliance is still applicable to determine whether the statutory requirements have been met.
 Title (E), see note 2, supra.
 Title (F), see note 2, supra.
 Title (G), see note 2, supra.
 Title (H), see note 2, supra.